### In the Matter of Jimmy Frank MURPHY, Bankrupt.

### No. 14357–M.

United States District Court,
N. D. Alabama, M. D.

Feb. 15, 1973.

**1236**

Walter I. Barnes, Gadsden, Ala., for bankrupt.

Bill Bradley, R. Kent Henslee, Gadsden, Ala., for trustee.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., Wayman G. Sherrer, U. S. Atty., N. D. Ala., Birmingham, Ala., for the I. R. S.

ALLGOOD, District Judge.

Jimmy Frank Murphy filed his voluntary petition in bankruptcy on November 8, 1971, and listed in Schedule "A" as one of his creditors, "Internal Revenue Service (Corporation tax assessed against debtor as an individual as president of the corporation) $2,809.77."

No objection to the discharge having been filed, the bankrupt was granted a discharge in the usual form on February 16, 1972. Notice of entry of Order of Discharge was given all creditors, including Director of Internal Revenue, on March 10, 1972. No claim was filed by Internal Revenue for the said tax.

Thereafter, on March 24, 1972, bankrupt through his attorney filed a "Petition for Determination of Legality of Derivative Tax Assessment, for Injunction, for ·Determination of Priority of Claims to Funds, and for Determination of Dischargeability of Debt."

In the said petition, it is alleged:

"That on May 28, 1971, IRS made a derivative assessment against this Bankrupt for said tax owed by said corporation [meaning Jim Murphy Ford Sales, Inc., also adjudicated a bankrupt on December 13, 1971] . . . and filed a tax lien accordingly on August 5, 1971, in Marshall County, Alabama, recorded in Tax Lien Record '5,' page 184, . . .."

Said petition further alleges:

"That during said periods, the Bankrupt has never willfully failed to collect subject tax, or to truthfully account for and pay over such tax, or to willfully attempt in any manner to evade or defeat any such tax or the payment thereof to Internal Revenue Service, and such derivative assessment as herein stated against this Bankrupt is wholly illegal, and being a derivative assessment against this Bankrupt and in the nature of a penalty, is dischargeable in bankruptcy in this proceeding."

The prayer of the petition alleges:

"PREMISES CONSIDERED, Petitioner makes the District Director of the Internal Revenue Service party respondent to this petition and prays that (1) the Court enter an order requiring the District Director to appear at a time and place set by the Court in said order and show any reason that he has why the Court should not declare the derivative assessment against this Bankrupt as above set out illegal and why the Court should not enter an order enjoining the District Director from further collecting or attempting to collect from this Bank-

rupt such derivative assessment; (2) the District Director be required to pay over to this Bankrupt all sums withheld and collected under the derivative assessment above referred to; (3) the Bankrupt is entitled to claim as exempt against the Trustee and the District Director the sum of $857.77 together with interest thereon from January 11, 1972, due as a refund to the Bankrupt and applied to the derivative assessment as aforesaid; (4) the derivative assessment against the Bankrupt as aforesaid is dischargeable in bankruptcy; and (5) for such other and further relief as may be just in the premises."

Although the provisions relating to determination of tax liability have been removed from Section 64(a)(4) to its present position in Section 2(a)(2A) of the Bankruptcy Act, the question of the Bankruptcy Court's right to determination remains the same. Bankruptcy Courts have struggled with this problem for three decades.

A thorough and informed appraisal of the issues raised by this review can be appreciated after the careful reading of the hearings before the Senate Judiciary Committee contained in Senate Report No. 91–1502 and in the discussion in Volume 3A, Collier on Bankruptcy, Section 64.407 beginning on Page 2204.

A quotation from Professor Vern C. Countryman's article "The New Dischargeability Law," contained in the American Bankruptcy Law Journal (Volume 45), beginning on page 28 through page 33 serves to point up what this means:

"Concurrent Jurisdiction Cases

"New Section 17c(1) provides that, 'The bankrupt or any creditor may file an application with the (bankruptcy) court for a determination of the dischargeability of any debt.'

"Since this provision is optional, and if the option is not exercised the issue of dischargeability would still be left for determination by any nonbankruptcy court in which a creditor might bring action on his claim, the draftsmen spoke of the cases comprehended by Section 17c(1) as those in which nonbankruptcy courts have 'concurrent jurisdiction.' But the nonbankruptcy courts have such jurisdiction only if neither the bankrupt nor the creditor submits the issue to the bankruptcy court. If either of them does so, Section 17c(4) again authorizes the bankruptcy court to enjoin institution or continuation of other actions pending a determination of the issue by the bankruptcy court, and the bankruptcy discharge, if granted, will, pursuant to Section 14f, declare null and void, and will enjoin the creditor from enforcing, 'any judgment theretofore or thereafter obtained in any other court . . . with respect to . . . debts determined to be discharged' by the bankruptcy court. Again Section 2a(15) seems adequate authority, if Section 17c(4), is not, to authorize injunctions against collection efforts before discharge.

"It should be noted that Section 17c(1) covers any dischargeability issue —it does not exclude those consigned to the exclusive jurisdiction of the bankruptcy court under Section 17c(2). Thus, it seems to give the following options:

"(1) If a creditor does not apply to the bankruptcy court within the prescribed time for a determination of issues under Section 17a(2), (4) or (8), the debtor could do so. But if I am correct in my previous suggestion that the debtor is entitled to have any creditor action or collection effort stayed without inquiry into the merits of the creditor's claim to exception under Section 17a(2), (4) or (8), the debtor would not be well advised to seek a ruling from the bankruptcy court on dischargeability. Rather, he should let the time fixed by the court for filing such claims expire, whereupon claims to exception from discharge under Section 17a(2), (4) and (8) will be barred by Section 17c(2).

"(2) If a creditor demands a jury trial to which he is entitled in a pending action in which he is asserting exception

from discharge under Section 17a(8), or files a statement of his intention to do so, under the second sentence of Section 17c(2) and thus escapes the requirement of the first sentence of Section 17c(2) that he submit the dischargeability issue to the bankruptcy court, the debtor may nonetheless submit that issue to the bankruptcy court under Section 17c(1).

"(3) The proposition advised in (2), above, cuts both ways. If the debtor demands a jury trial in the pending action, or files a statement of his intention to do so, the creditor is no longer required by Section 17c(2) to apply to the bankruptcy court for a determination of dischargeability under Section 17a(8). But Section 17c(1) still gives him the option to do so.

"It should be noted also that Section 17c(1), unlike Section 17c(2), is not confined to questions of dischargeability under one or more of the specific exceptions listed in Section 17a. Hence, either party may under Section 17c(1) apply to the bankruptcy court for a determination of dischargeability with respect to a debt which the creditor contends, or may contend, is not dischargeable because (1) not provable or (2) scheduled in a prior proceeding in which no discharge was granted and which is taken to bar dischargeability in a later proceeding under the doctrine of *res judicata*.

"Finally, no time limit is fixed for optional applications under Section 17c(1). The time fixed by the bankruptcy court for filing such applications applies only to those applications which a creditor is required to file under Section 17c(2). Indeed, new Section 17c(6) contemplates that an optional application may be filed even after the bankruptcy case is closed, by providing that if the case is reopened for such purpose no additional filing fee shall be required.

"Rendering Judgment on Nondischargeable Claims

"Whether the application to determine dischargeability is an optional one under Section 17c(1) or one which a creditor is required to make under Section 17c(2), subsequent proceedings are governed by new Section 17c(3). The bankruptcy court is to determine the dischargeability issue after hearing upon notice. If it determines that the claim is dischargeable, it is to 'make such orders as are necessary to protect or effectuate' its determination. If it determines that the claim is not dischargeable, it 'shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof.' As I testified about language in the earlier NBC bill which, so far as here pertinent, was identical, it 'is intended to make clear that the court's judgment may be enforced as federal court judgments usually are enforced, by writ of execution and proceedings in aid thereof pursuant to Federal Rule of Civil Procedure 69a. Both Fed.R.Civ.P. 81(a)(1) and General Order No. 37 in bankruptcy make the Federal Rules applicable in bankruptcy . . . "insofar as they are not inconsistent with the Act or those general orders." ' And it bears repeating that under amended Section 38(4), jurisdiction to enter such judgments is specifically conferred upon the referees.

"This is the new law's answer to the fear that authorizing 'split discharges' would subject the parties to two litigations on a single claim. The NBC bill would not have gone so far. On an application to determine dischargeability which was mandatory for the creditor, it would have given either party a choice to take the question of liability to a nonbankruptcy court after the bankruptcy court had determined the claim to be nondischargeable. On optional applications, it would have given the choice to the party who did not apply for a determination of dischargeability in the bankruptcy court. The Referees' bill, which had no mandatory applications, but which gave the bankruptcy court exclusive jurisdiction over all dischargeability issues save those involving taxes under Section 17a(1), would have given the choice to the party who did not in-

voke the bankruptcy court's jurisdiction. But both bills would also have given the bankruptcy court discretion to decline to determine the remaining issues and render judgment. New Section 17c(3), provides that the court 'shall' determine those issues and render judgment. It deprives the bankruptcy court of discretion to remit the remaining issues to another court on the theory that, by relieving the bankruptcy court of the burden of holding jury trials in negligence cases, it had covered the cases in which that court might appropriately exercise such discretion.

"Like others of us who participated in the last-minute revision of what became the new law, the Referee most concerned with relieving the bankruptcy courts of jury trials in negligence cases, has been reflecting upon his handiwork and has become concerned about two additional types of litigation to which we have subjected the bankruptcy court where either party makes an optional application for determination of dischargeability:

"(1) He fears that the new law may require the bankruptcy court to 'take a tax case away from the Tax Court or district or circuit judges.' Not, I believe, from circuit courts of appeal judges. If a judgment has already been entered by the Tax Court or a district court before the bankruptcy court determines that the tax claim is nondischargeable, there are no 'remaining issues to be determined' within the meaning of Section 17(c)(3). That would also be true of any other claim reduced to judgment before that time. Amended Sections 2a(12) and 38(4) only give the bankruptcy court jurisdiction to 'render judgments,' not jurisdiction to review judgments entered by other courts.

"But Section 17c(3) does, I believe, require the bankruptcy court to take a tax case from the Tax Court or a district court when judgment has not yet been rendered on an undischarged tax claim. There is no suggestion in the legislative history that multiple litigation over tax claims was any less to be avoided than multiple litigation over any other claims.

If the concern is for judicial dignity, no greater claims can be made for the Tax Court than for other courts of original jurisdiction, nor for a federal district court sitting in a tax case than for such a court sitting in any other case. Of if the concern is over the competence of referees to handle tax cases, or the wisdom of burdening them with such cases, Congress seems to have resolved that issue in 1966 when it added Section 2a (2A) giving the bankruptcy courts jurisdiction to 'hear and determine, or cause to be heard and determined, any question arising as to the amount of any unpaid tax . . . which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal . . .'—a provision which seems applicable to questions of tax liability committed to the bankruptcy court by Section 17c(3)."

The Supreme Court in 1941, in Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 85 L.Ed. 1244, 61 S. Ct. 888, 45 Am.B.R.(N.S.) 462, cast grave doubts on the free and full power of the Bankruptcy Court to examine into the validity, legality and amount of taxes where final assessments had been made in accordance with State and Federal laws by qualified officials under established procedures. A great breach grew in what was thought to be the weight of authority, creating a divergence of decision. This story is interestingly told in Volume 3A, Collier on Bankruptcy, beginning at page 2205.

Since the 1966 addition of Section 2(a)(2A) to the jurisdictional section of the Bankruptcy Act, the Court of Appeals of the Fifth Circuit, in two cases, has indicated a reluctance to go as far jurisdictional-wise as Congress seems to have wanted to confer on the Bankruptcy Court by Section 2(a)(2A), when liability for taxes of the United States is involved. The courts suggest that possibly the United States should not be held to consent to jurisdiction unless a claim is filed. In re Statmaster Corporation, 465 F.2d 978 (5th Cir. 1972).

**1240**

This court had occasion to review the law as existing in 1941. In re Lasky, 38 F.Supp. 24 (D.C.N.D.Ala.1941). The matter related to assessment for ad valorem taxes due Madison County, Alabama. On appeal by the State of Alabama, the Court of Appeals held that the review was prematurely taken because no final order or judgment had been made by the Bankruptcy Court. The gist of the holding seemed to be that an assessment when properly made on evidence presented and after due deliberation by an informed body or official after a hearing and proper notice and an opportunity to appear and present a defense, had all the qualities of a final judgment and the attributes of *res judicata*.

 It was no doubt the purpose of Congress in enacting amendment 2(a)(2A) to clarify and strengthen the Bankruptcy Court's authority and duty in this regard, and to express in clear and certain terms when the Bankruptcy Court could reexamine an assessment of tax liability.

This is illustrated by the use of the words of the amendment underscored herewith:

"(2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, *whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction,* and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review;" (Emphasis added).

However, the instant case arises first under the authority of Section 17(c) in an attempt by the bankrupt to exonerate himself from paying taxes derivatively assessed against him by seeking to have the Bankruptcy Court declare the tax discharged by his bankruptcy. This only incidentally brings into question his liability for the tax and the duty of the court, under Section 2(a)(2A) to determine whether he was legally and properly assessed for tax liability.

It is apparent that the United States has not yet been injured by the action of the Referee as it is entirely possible that the Referee will find that the tax liability of the bankrupt is legally due and owing and nondischargeable in bankruptcy. The Referee may dismiss the application. The review is premature and piecemeal. City of Ft. Lauderdale v. Freeman, 197 F.2d 122 (5th Cir. 1952); In re Schimmel, 203 F. 181 (D.C.E.D.Penn.1913).