**In the Matter of Lloyd James DUREN-SKY, Bankrupt.**

**No. BK 3-2585.**

United States District Court,
N. D. Texas,
Dallas Division.

May 28, 1974.

John C. Moran, Oklahoma City, Okl., for bankrupt.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., Roger J. Allen, Asst. U. S. Atty., Dallas, Tex., Francis P. Dicello, Tax Div., Dept. of Justice, Washington, D. C., for United States.

## MEMORANDUM ORDER

MAHON, District Judge.

This is an appeal from the order of the bankruptcy court denying the Government's motion to dismiss.

On February 25, 1972, Lloyd James Durensky filed a voluntary petition in bankruptcy. In the schedule filed with the petition, the United States was named among the creditors by virtue of income taxes alleged to be due in the amount of approximately $90,000.00. Notice of First Meeting of Creditors was served upon the United States through its Internal Revenue Service on March 10, 1972. Notice was also given that an order had been entered setting May 22, 1972, as the last day for filing objections to the discharge of the bankrupt and for filing applications pursuant to § 17c(2) of the Bankruptcy Act, 11 U.S.C. § 35c(2) (1970),[1] to determine

---

1. Section 17c provides:

(1) The bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt.

(2) A creditor who contends that his debt is not discharged under clause (2), (4), or (8), of subdivision (a) of this section must file an application for a determination of

the dischargeability of debt claimed to be nondischargeable under clauses (2), (4), or (8) of Section 17a of the Act. The United States made no response and filed no claim. The bankruptcy court's Order of Discharge was entered on May 25, 1972, and notice of entry thereof was mailed June 9, 1972.

Thereafter, on August 8, 1972, the Internal Revenue Service gave the bankrupt "Final Notice Before Seizure" whereupon it · was indicated that the taxes in question related to the years 1964 and 1965. The bankrupt then filed an Application to Determine Dischargeability of Debt as provided for in § 17c of the Act. In the application it was alleged that the Internal Revenue Service had persisted in undertaking collection efforts against the bankrupt subsequent to the entry of the Order of Discharge. A temporary restraining order was entered and thereafter the Government moved for dismissal, urging, *inter alia,* that there was no jurisdiction to determine whether a debt due the United States is discharged where the United States has filed no proof of claim. The bankruptcy court's memorandum order

of February 1, 1974, reflects that the United States sought a determination that jurisdiction was lacking. The Government urged that if the bankruptcy court concluded that it did have jurisdiction, it should then determine that the taxes in controversy were not discharged in that they were taxes "with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat . . .." Section 17(a)(1) (d) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1)(d).[2]

The bankruptcy court entered an order denying the motion to dismiss on December 21, 1974. With the consent of the Internal Revenue Service, the fraud issue was set for trial.

Subsequently, the Government elected to appeal from the ruling of the bankruptcy court wherein jurisdiction had been upheld. The matter is now before this Court for consideration of that appeal. The United States urges that the bankruptcy court has no jurisdiction to determine whether a debt of the bankrupt to the United States has been discharged where the United States has not

---

dischargeability within the time fixed by the court pursuant to paragraph (1) of subdivision (b) of section 32 of this title and, unless an application is timely filed, the debt shall be discharged. Notwithstanding the preceding sentence, no application need be filed for a debt excepted by clause (8) if a right to trial by jury exists and any party to a pending action on such debt has timely demanded a trial by jury or if either the bankrupt or a creditor submits a signed statement of an intention to do so.

(3) After hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof. A creditor who files such application does not submit himself to the jurisdiction of the court for any purposes other than those specified in this subdivision.

(4) The provisions of this subdivision shall apply whether or not an action on a debt

is then pending in another court and any party may be enjoined from instituting or continuing such action prior to or during the pendency of a proceeding to determine its dischargeability under this subdivision.

(5) Nothing in this subdivision shall be deemed to affect the right of any party, upon timely demand, to a trial by jury where such right exists.

(6) If a bankruptcy case is reopened for the purpose of obtaining the orders and judgments authorized by this subdivision, no additional filing fee shall be required.

2. Section 17(a)(1)(d) provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes . . . (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat . . .."

filed a proof of claim. The contention is made that the Government must waive sovereign immunity or otherwise voluntarily submit itself to the jurisdiction of the bankruptcy court for there to exist in that court the power to determine the rights of the United States.

Section 2a(2A) of the Act, 11 U.S.C. § 11(a)(2A), an amendment enacted in 1966, provides that courts of bankruptcy are invested with jurisdiction to—

> "Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction. . . ."

The statute in question is an express grant of jurisdiction. As was noted by the bankruptcy judge. in the order of February 1, "[M]uch authority does exist for the proposition that the bankruptcy court in this context does have jurisdiction to determine the dischargeability of tax claims of this nature, whether or not a proof of claim is filed. In re Standard Milling Co., Inc., 324 F. Supp. 386 (N.D.Tex.1970); In re Curtis, [CCH 1969 Stand.Fed.Tax Rep., U.S. Tax Cas. (69–1 at 84, 805) ¶ 9433,] 1969 CCH Bankr.L.Rep. ¶ 63,136 (D.Mich. 1969); In re Murphy, ¶ 64,755 CCH Bankr.L.Rep. (Bankruptcy Ct.Ala., 1972), [remanded for dismissal, 355 F. Supp. 1235 (N.D.Ala.1973)]. See also, In the Matter of Century Vault Co., 416 F.2d 1035, (3rd Cir. 1969), where at page 1041 the Court says, '. . . The Bankruptcy Court has jurisdiction to hear and determine any question arising as to the amount of any unpaid tax if that question has not been contested prior to bankruptcy. The fact that a proof of claim has or has not been filed is immaterial.' " [3]

Further, in 3A Collier on Bankruptcy, ¶ 64.407[3] at 2234–2235 (14th ed. rev.

1972), it is observed that in connection with tax disputes before bankruptcy courts,

> "The jurisdictional grant under the first part of § 2a(2A) to hear and determine 'any question arising as to the amount or legality of any tax is limited by two factors only. First of all the tax must not have been paid. . . . Secondly, the disputed tax must not have been contested and adjudicated prior to bankruptcy. Thus, the immaterial elements not affecting the court's jurisdiction, include . . whether or not a proof of claim is filed for the tax. Actually, if a proof of claim has been filed the court has independent power under § 57 to determine its validity and amount before allowing it."

■ With reference to the Government's first contention, this Court finds little difficulty in concluding that jurisdiction does lie to determine dischargeability without regard to whether a proof of claim is filed.

■ The Government next argues that even if there is jurisdiction to determine *dischargeability* of a tax debt, the bankruptcy court is nevertheless precluded from undertaking to determine the *merits* of a dispute wherein the United States has not subjected itself to the court's jurisdiction. It is urged that in this cause resolution of the dischargeability issue requires determination of the merits of the claim, viz., for the debt not to be discharged it must first be established that the taxes alleged to be due are taxes "with respect to which the bankrupt made a false or fraudulent return." This, the Government contends, would be inconsistent with the legislative history of the amendments to the Bankruptcy Act, particularly the express statement of the Senate Finance Committee wherein it was said:

> "This committee understands that this amendment makes no change in present law under which a bankruptcy

---

3. *See also* In re Johnson Electrical Corp., 312 F.Supp. 840 (S.D.N.Y.1970), rev'd on other grounds, 442 F.2d 281 (2d Cir. 1971).

court cannot adjudicate the merits of any, claim, including a Federal tax claim, which has not been asserted in the bankruptcy proceeding by the filing of a proof of claim." S.Rep.No. 999, 89th Cong., 2d Sess., at 11 (1966), 2 U.S.Code Cong. & Admin.News, pp. 2442 at 2452 (1966)."

A review of the legislative history relative to § 2a(2A) and its companion amendments reveals that the statement of the Senate Finance Committee that is herein given emphasis by the Government appears in the closing paragraph of the last section of the majority views of Senate Report No. 999. The statement is made under the concluding general topic, "Comments on Other Provisions of the Bill," not under the more specific section captioned "Discharge of Taxes" wherein H.R. 3438 (encompassing the § 2a(2A) amendment) was addressed. In fact, the Senate Finance Committee's recommendations on H.R. 3438 appeared in Senate Report 998, not Senate Report No. 999,[4] and though the Finance Committee discussed its recommendations on both H.R. 3438 and H.R. 136 in Senate Report No. 999, its views relative to H.R. 3438 were not adopted and its recommendations relative thereto were expressly rejected.[5]

House Resolution 3438, which included the jurisdictional § 2a(2A) proposal, was considered by the Senate Finance Committee together with its companion bill, H.R. 136, the amendment to sections 1, 17a, 64a(5), 67c and 70c of the Bankruptcy Act which related in many respects to tax liens and their status. The two amendatory bills had been referred to the Judiciary Committee and thereafter re-referred to the Senate Finance Committee "for consideration of their tax aspects with instructions to return them to the Senate. . . . ",[6] and, as has been noted above, the committee recommendations relative to them both appeared in Senate Report No. 999. It is in this context that attention is directed to the observations of Professor Frank R. Kennedy, Reporter of the Advisory Committee on Bankruptcy Rules and a member of the National Bankruptcy Conference. He has written:

"One of the exasperating aspects of the campaign for enactment of H.R. [sic] 89–495 was the insistence by the Treasury Department that the Supreme Court changed the law in [United States v.] Speers, [382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965)] and thereby exposed the Government's unfiled federal tax lien to new risks of such seriousness that it would now have to notice file all tax liens without regard to (1) the cost and inconvenience to the Government of adopting such a policy or (2) the hardship to the tax debtor resulting from such a step. The Treasury Department's views are reflected in Sen.Rep.No.999, 89th Cong., 2d Sess. 4, 11–12 (1966). The Treasury Department sought to amend the statutory lien bill to overrule United States v. Speers, and indeed persuaded a majority of the Senate Finance Committee to recommend such an amendment. Id. at 12–13. A minority of that committee exposed the fallacies of the majority's report in a short dissent, id. at 22–24, and the Senate Committee on the Judiciary unanimously adopted the views of the minority of the Senate Finance Com-

---

4. *See* S.Rep.No.1158, U.S.Code Cong. & Admin.News, pp. 2468, 2469 (1966).

5. *Id.* at 2473. *See also* 1A Collier, Bankruptcy ¶ 17.14 at 1614 (14th ed. rev. 1974).
   The "tax priority and nondischargeability bill" (H.R. 3438 and S. 976) was enacted as Act of July 5, 1966, Pub.L.No.89–496, 80 Stat. 270.

The "statutory lien bill" (H.R. 136 and S. 1912) was enacted as Act of July 5, 1966, Pub.L.No.89–495, 80 Stat. 268.

6. Senate Finance Committee S.Rep.No.999, 89th Cong., 2d Sess. 1 (1966), 2 U.S.Code Cong. & Admin.News 2442 (1966) (emphasis added).

mittee. Sen.Rep.No.1159, 89th Cong., 2d Sess. 13 (1966).[7]

The Court of Appeals for the Fifth Circuit has noted the inconsistency between the § 2a(2A) amendment and the Senate Finance Committee statement that is relied upon by the Government. See In re Statmaster Corp., 465 F.2d 978 (5th Cir. 1971). In *Statmaster*, disposition of the appeal did not require resolution of that issue and the jurisdictional question was left unanswered. 465 F.2d at 981. However, one commentator has addressed himself to the jurisdictional issue raised therein and has said:

"The Finance Committee statement, however, was never considered by the House of Representatives, which had earlier passed the bill; and, even on the Senate side, Finance was not the originating committee but one to which a Judiciary bill had been referred for consideration because of its tax involvement. The Finance Report, in fact, was generally adverse to key features of the bill and proposed a number of Treasury-sponsored changes which were then rejected by the Senate Judiciary Committee . . . and were also voted down by the Senate. 112 Cong.Rec. 13812–23 (1966). In the circumstances, the Finance Committee's attempt, by mere recital in its report, to control the language of another provision with which it purported to agree may have less than the customary weight. Hawkes v. Internal Revenue Service, 467 F.2d 787, 794 (6th Cir. 1972); United States v. Lake, 406 F.2d 941, 947 (5th Cir. 1969)."[8]

Collier's on Bankruptcy discusses § 2a(2A) and the Finance Committee statement in Senate Report No. 999 and says of the amendment that it "seems to go beyond the point contemplated by the Senate Finance Committee. . . ."[9] Further, Professor Kennedy writes:

"The new section 2a(2A) is a revision and transposition of section 64a (4)'s second proviso. Some difference of opinion has developed respecting the effect of the new language. Does it codify or change existing law? The Senate Finance Committee approved this amendment of the law, stressing at the time its understanding that it made no change in present law under which a bankruptcy court cannot adjudicate the merits of any claim, including a federal tax claim which has not been asserted in the bankruptcy proceeding by the filing of a proof of claim. Even if it were true that the amendment effects no change, it has long been clear that the bankruptcy court may determine in summary proceedings the amount and legality of any tax claim against property in the custody of the court, including any tax claim secured by a lien, whether or not a proof of claim is filed. *The committee's reading of this explicit grant of jurisdiction would reduce it to a nullity, since it is clear without the provision that the bankruptcy court can determine the amount and legality of any claim duly filed in a bankruptcy case.*"[10]

There is, then, in what has heretofore been stated, ample authority upon which this Court would be justified in completely disregarding the Committee statement in Senate Report No. 999. While this is believed to be so, there are, nonetheless, other matters relative to this issue that have been considered by the Court and which merit brief discussion.

7. Kennedy, The Bankruptcy Amendments of 1966, 1 Ga.L.Rev. 149, 159 n. 41 (1967), also appearing at 41 Ref.J. 5, 8 at n. 40 (1967).

8. W. Plumb, Report on Federal Income Tax Returns and Liabilities in Bankruptcy at 127, reprinted in Report of the Commission on Bankruptcy Laws of the United States Part III (1973).
The discrepancy between the treatment accorded the bills by the Senate Finance Committee and the Senate Judiciary Committee and the "dramatic change" in the situation after referred to the latter were noted in In re Indian Lake Estates, Inc., 428 F.2d 319, 322 (5th Cir. 1970).

9. 3A Collier, Bankruptcy, ¶ 64.407[3] at 2234 (14th ed. rev. 1972).

10. Kennedy, The Bankruptcy Amendments of 1966, 1 Ga.L.Rev. 149, 172–173 (1967) (emphasis added; footnotes omitted).

Section 17 of the Bankruptcy Act, 11 U.S.C. § 35 (Supp.1973) was amended in 1970. Section 17(c) provides in pertinent part:

"(1) The bankrupt or any creditor may file an application with the court for the determination of the dischargeability of *any debt.*

\*   \*   \*   \*   \*   \*

(3) After hearing upon notice, the court *shall determine* the dischargeability of *any debt* for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, *if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof."* (Emphasis added.)

With reference to this statute it has been said, particularly in light of the provision of section 14(f), 11 U.S.C. § 32(f) (Supp.1973) whereby judgments of nonbankruptcy courts can be rendered "null and void as a determination of the personal liability of the bankrupt. . .", that "an interpretation giving pre-eminent jurisdiction to the bankruptcy court is clearly plausible." [11] Professor Vern C. Countryman, a member of the U. S. Judicial Conference Advisory Committee on Bankruptcy Rules, has written:

"[S]ection 17c(3) does, I believe, require the bankruptcy court to take a tax case from the Tax Court or a district court when judgment has not yet been rendered on an undischarged tax claim. There is no suggestion in the legislative history that multiple litigation over tax claims was any less to be avoided than multiple litigation over any other claims. If the concern is for judicial dignity, no greater claim can be made for the Tax Court than for other courts of original jurisdiction, nor for a federal district court sitting in a tax case than for such a court sitting in any other case. Or if the concern is over the competence of referee to handle tax cases, or the wisdom of burdening them with such cases, Congress seems to have resolved that issue in 1966 when it added § 2a(2A) giving the bankruptcy courts jurisdiction to 'hear and determine, or cause to be heard and determined, any question arising as to the amount of any unpaid tax . . . which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal. . . .'—a provision which seems applicable to questions of tax liability committed to the bankruptcy court by § 17c(3).[12]

It is to be further noted that on April 24, 1973, the Supreme Court ordered "That the rules and forms as approved by the Judicial Conference of the United States, to be known as the Bankruptcy Rules and Official Bankruptcy Forms,

---

11. D. Cowans, Bankruptcy Law and Practice, § 433 at 102 (Supp.1973). Referee Cowan's work discusses whether jurisdiction of non-bankruptcy courts is at sufferance of the bankruptcy court or by virtue of concurrent jurisdiction; but no question arises with regard to the existence of the bankruptcy court's jurisdiction.

12. Countryman, The New Dischargeability Law, 45 Am.Bankr.L.J. 1, 32–33 (1971). There it is also noted with reference to determinations of nondischargeability that rights to jury trial may also obtain. It is suggested that a jury would be necessary only after determination by the bankruptcy court that the debt was nondischargeable. Countryman writes: "It is true that in some instances some of the factual questions involved in the ruling on dischargeability will be identical to those involved in a subsequent determination of liability, and that in holding the claim not discharged the bankruptcy court will have resolved those questions against the debtor. . . . Whether the court's ruling on dischargeability be viewed as a ruling in a separate proceeding to which the doctrine of *res judicata* would normally apply, or as a ruling in the same proceeding in which the jury is summoned which would normally be viewed as the law of the case, it should not, in my judgment be given its usual effect here." *Id.* at 40–41.

In addition to supporting the conclusion that jurisdiction lies in bankruptcy court to determine all issues in controversy, this would also support the suggestion that the determination of nondischargeability need not necessarily be dispositive of the merits of a tax claim.

be, and they hereby are, prescribed pursuant to Section 2075, Title 28, United States Code, to govern the forms of process, writs, pleadings, and motions, and the practice and procedure under the Bankruptcy Act. . . ." The Rules of Bankruptcy Procedure were reported to Congress and became effective October 1, 1973. Rule 409 "prescribes the procedure to be followed when a party requests the court of bankruptcy to determine dischargeability of a debt pursuant to § 17c of the Act." [13] Section (a)(1) of that rule provides: "A bankrupt or any creditor may file a complaint with the court to obtain a determination of the dischargeability of *any debt.*" (Emphasis added). Further, Rule 303 would permit the bankrupt to file a proof of claim with regard to taxes where the government has failed to do so. In the Advisory Committee's Note it is observed, "Not all tax and wage claims are nondischargeable but it may be particularly difficult to determine whether tax claims survive discharge. . . . In order to eliminate the necessity of *his* resolution of this troublesome issue, *the option extended the bankrupt* by this rule does not depend on nondischargeability." [14] The elimination of the necessity of the bankrupt's resolution of the issue of dischargeability and the extension of an option to him would seemingly presuppose that an alternative were available to the bankrupt. [15] That alternative is a proceeding under Section 17c of the Act and Rule 409.

Further, Section 17c directs that the bankruptcy court "shall determine the dischargeability of any debt for which an application for such determination has been filed . . . and, if any debt is determined to be nondischargeable, shall determine the remaining issues [and] render judgment. . . ." § 17(c)

(3), 11 U.S.C. § 35(c)(3). The United States contends that this applies to any debt except a tax debt for which no proof of claim has been filed. No cogent reason has been advanced that would compel this Court to conclude that such an exception is implicit in either the Bankruptcy Act or Rules. The failure to spell out any such exception when given the opportunity in the later-adopted rules would lead this Court to believe that the Supreme Court and Congress construed § 2a(2A) and § 17 of the Act to be free of the contradiction now sought to be read into them. I am in agreement with the Court's statement in In re Curtis, *supra,* wherein it was said, "If it was the intent of Congress as a whole that the jurisdiction of the bankruptcy courts to adjudicate tax questions be limited to where a proof of claim has been filed, it could easily have so provided." CCH 1969 Stand.Fed.Tax Rep., U.S.Tax Cas. (69–1 at 84, 806) ¶ 9433.[16]

In sum, then, we are shown that the Government's case rests in large measure on a sentence in a Senate Finance Committee Report that reflected Treasury Department views and which was not adopted. It is further seen that since the date of that report and the enactment of the legislation to which it related, there have been amendments to the Bankruptcy Act passed into law and formal Rules of Bankruptcy Procedure drafted, compiled and made effective, and neither the amendatory statutes or the Rules support the Government's position. Instead, they reflect provisions by which a bankrupt may place certain tax disputes before the bankruptcy court for determination of dischargeability without regard to whether taxing authorities have filed proofs of claims. Nor do the Rules or legislative enactments reflect any intent on the part of Congress to

---

13. Bankruptcy Rules, rule 409 (1973) (Advisory Committee's Note).

14. Bankruptcy Rules, rule 303 (1973) (Advisory Committee's Note). (Citations omitted; emphasis added).

15. The conclusion in In re O'Ffill, 368 F. Supp. 345 (D.C.Kan.1973), that § 2a(2A)

jurisdiction "presupposes that the merits of the tax claim have been drawn into issue by the filing of a proof of claim by the government in the bankruptcy proceeding is expressly rejected.

16. *Cf.* Kennedy, The Bankruptcy Amendments of 1966, 1 Ga.L.Rev. 149, 180 (1967).

create an exception of the type herein urged by the Government relative to tax disputes such as that before the Court.

This Court is not persuaded by the efforts herein made by the Treasury Department to impress upon the legislation its views which Congress itself has already declined to adopt. It has been said with reference to the 1966 amendments to the Bankruptcy Act, Pub.L.Nos. 89–495 and 89–496, "The dimensions of the time and effort required to get these measures enacted are a measure of the effectiveness of the Treasury Department in opposing legislation which touches the revenues in the ways that it does not approve." [17] The attempted advancement of the Government's position in the cause at bar on the basis of the Finance Committee Report appears to be but yet another effort to abort the statute. I question the good faith of the Government in making the arguments herein asserted and I find little reason to give the aforementioned committee statement controlling weight. To the contrary, the statement is spurious, sired in fact by the Treasury Department, and entitled to no weight in construing either the statute or the legislative intent behind it.

It has been noted that "Congress, in the course of debates and reports, frequently said it intended for the 1966 amendments to press taxing authorities to act more expediently in dealing with tax claims. . . ." [18] and mention is made in the floor discussion relative to the 1970 amendments to the Act of "unscrupulous creditors" who wait until bankruptcy proceedings are concluded to bring suit in nonbankruptcy courts.[19] This Court concludes that the bankruptcy court has jurisdiction in this cause to determine dischargeability, and, if there is a finding of nondischargeability, to determine the remaining issues and thereafter render judgment.

§ 17(c)(3), 11 U.S.C. § 35(c)(3) (Supp. 1973).[20] It is believed that this determination is consistent with the express wording of the statutes. It is believed to be consistent, also, with the concerns of Congress stated above and with the general purposes sought to be effectuated by the Congress through bankruptcy legislation as a whole.

While the foregoing reflects the Court's conclusion that the relief therein sought by appellant United States is not available, the granting of any such relief would be inappropriate on other grounds as well. Rule 712 of the Bankruptcy Rules is "an adaptation of Rule 12 of the Federal Rules of Civil Procedure." [21] Rule 112 of the Bankruptcy Rules, captioned "Responsive Pleading or Motion" makes express reference to the applicability of civil Rule 12, and the accompanying Advisory Committee Note states: "Rule 12 of the Federal Rules of Civil Procedure has been looked to by the courts as prescribing the mode of making a defense or objection to a petition in bankruptcy." The Advisory Committee Note following Bankruptcy Rule 915, the rule governing objections to the jurisdiction of the court of bankruptcy, states that Rule 112 "generally incorporates the provisions of Rule 12 of the Federal Rules of Civil Procedure. . . . "

█ It is appropriate, then, to look to civil Rule 12 and authorities relating thereto to determine the principles to be applied to bankruptcy proceedings. Contemplated by the Bankruptcy Rules would be the defense of Rule 12(b)(1), Fed.R. Civ.P., 28 U.S.C. (1970) under which lack of jurisdiction of the subject matter may be raised by motion to dismiss, as was done herein. In this regard, it is to be noted that while neither the defendant nor the court are precluded by a ruling on a jurisdictional motion from thereafter considering the same question,

---

17. *Id.* at 149.

18. In re Indian Lake Estates, Inc., 428 F.2d 319, 323 (5th Cir. 1970).

19. 116 Cong.Rec.H. 34818 (1970).

20. In re Zook, Bk. No. 72–9436 (C.D.Cal. March 27, 1974) is expressly rejected.

21. Bankruptcy Rules, rule 712 (1973) (Advisory Committee's Note).

"Denial of a motion to dismiss is not a final order and is therefore not appealable." [22]    Here, as in In re Murphy, 355 F.Supp. 1235, 1240 (N.D.Ala.1973), "The review is premature and piecemeal. City of Fort Lauderdale v. Freeman, 197 F.2d 122 (5th Cir. 1952); In re Schimmel, 203 F. 181 (D.C.E.D.Pa.1913)." [23]

For all of the above reasons this matter is remanded to the bankruptcy court.

It is so ordered.

---

22.  2A J. Moore, Federal Practice, ¶ 12.14 at 2337–2338 (2d ed. rev. 1974).  Lack of jurisdiction of the subject matter can be raised at any time.   Bankruptcy Rules, rule 112 (1973) (Advisory Committee's Note);  Rule Bankruptcy Rules rule 915 (1973) (Advisory Committee's Note);  Rule 12(h)(3), Fed.R. Civ.P., 28 U.S.C. (1970).

23.  However, the suggestion in *Murphy* that, in the bankruptcy court, dismissal might follow a finding of nondischargeability would appear to be inconsistent with the dictates of § 17(c)(3) of the Bankruptcy Act, note 1 *supra.*