In the Matter of Dr. Clarence Herman HARPER, d/b/a Jackson & Harper, M.D. (a partnership) d/b/a Jackson & Harper, P.A., Bankrupt.

Clarence Herman HARPER, Appellant,

v.

DISTRICT DIRECTOR OF INTERNAL REVENUE, Appellee.

No. 76–1202.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1978.

W. J. Jacques, Jr., Waycross, Ga., for appellant.

R. Jackson B. Smith, Jr., U.S. Atty., Henry L. Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appeals Section, Karl Schmeidler, Libero Marinelli, Jr., Attys., Tax Division, U.S. Dept. of Justice, Washington, D.C., for appellee.

Before INGRAHAM, GEE and TJOFLAT, Circuit Judges.

GEE, Circuit Judge:

Decision of this appeal requires us to determine whether, for purposes of the Bankruptcy Act, an income tax return filed more than two and one-half years late qualifies as "a return required by law." We conclude, for reasons which follow, that although the law certainly requires that returns be filed even though tardy, the portion of the Act concerned is properly to be read as referring to returns filed in reasonable compliance with the law. We therefore hold that in so doing the bankrupt failed to make the return required by law and hence is not entitled to discharge of the tax concerned.

In late 1972 appellant Clarence Herman Harper (Dr. Harper) discovered that his accountant had not filed his and his former wife's income tax returns for calendar tax years 1968–71, though these had been prepared and signed. At the same time, he learned that the taxes shown as due on these returns were unpaid. He consulted the Internal Revenue Service and, on its advice, filed the returns on November 30, 1972.

In accord with adjustment and assessment agreements, substantial taxes were assessed on May 14, 1973. In June of the same year, Dr. Harper petitioned for bankruptcy. He was later so adjudged, the government filing timely proof of claim as a priority claimant for the unpaid taxes. The bankruptcy court allowed these claims for the years 1970 and 1971 but discharged the taxpayer from his 1969 liability as representing taxes due and owing for more than three years before bankruptcy, finding also (as is not disputed here) that none of the returns was false or fraudulent and that Dr. Harper had not attempted to evade these taxes. On appeal the district court determined that the 1969 tax liability fell within the exception to discharge of 11 U.S.C. § 35(a)(1)(b) (Supp.1978) and hence that Dr. Harper was not entitled to discharge of this liability.

That section is a portion of section 17a(1) of the Bankruptcy Act, providing in pertinent part as follows:

> Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not as-

sessed in any case in which the bankrupt failed to make a return required by law, (b) *which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law,* (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over . . . . .

(emphasis added).

■ This section of the Bankruptcy Act was adopted by Congress as a result of its perception that the existing law denying discharge to all tax debts was unduly hampering rehabilitation of debtors because of the large and increasing proportion of individual and commercial income currently consumed by various taxes. S.Rep. No. 1158, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 2468, 2469. This same report indicates, however, a parallel congressional concern that a sufficient period be provided after filing for tax authorities to audit returns and assess deficiencies. The report states that "a 3-year period . . . will not impose an unrealistic or unfair burden upon the tax authorities . . . ." *Id.* at 2470. Thus, it seems clear that Congress believed it was enacting, in the above section, a provision which would give tax authorities such a period within which to audit returns and take action. And the quoted language

must as well have specific reference to section 17(a)(1)(b), the exception at issue here, since this is the only one in section 17a dealing specifically with taxes which have been assessed.[1] Bearing in mind these clues to congressional intent, we turn now to a construction of the critical phrase of 17a(1)(b), "failed to make a return required by law . . . ."

■ We recognize at the outset, as did the district judge, that the phrase is ambiguous. It may be viewed as referring solely to cases in which taxes were owing and the debtor entirely failed to make any return whatever.[2] Or it may be seen as referring to those in which there was a failure to file a return *in the manner* required by law, that is, in sufficient compliance with the law's dictates as to timeliness, content, etc. as to permit audit and assessment.[3]

Each party argues that the plain meaning of the statutory language supports his view. The bankrupt's contention in this respect is that, though he filed late, he did not "fail to make a return." The United States responds that the return must be that "required by law," a law which demands timely filing. I.R.C. § 6072(a). We think the government's position slightly the stronger, giving, as it does, effect—if somewhat rigorous effect—to all portions of the phrase in question. The bankrupt's view essentially renders the phrase "required by law" redundant since, for purposes of his argument, it adds little or nothing to what precedes it: "failed to make a return." The sole reference which "required by law" could have on the taxpayer's construction would be to the presence of taxable income, but if there were no such income there would be no debt and no need to make a "return" in the first place. The issue of failure to make a return would therefore

---

1. The report also observes, *ibid.,* that § 17a(1)(a) was incorporated to further "the purpose of [the] bill . . . to provide relief for the financially unfortunate and not to create a tax evasion device . . . ."

2. As though it read: "in any case in which a return was required by law and the bankrupt never filed any return whatever . . . ."

3. As though it read: "in any case in which the bankrupt failed to make a return substantially complying with the law's requirements . . . ."

never arise. In considerations of style and grammar, then, the government's position seems the sounder. We can scarcely rest here, however, in a matter so close. Nor do the parties, each of whom advances arguments grounded in probable congressional intent and policy.

We have noted above indications of congressional intent to permit taxing authorities a reasonable period for audit and collection after returns are filed before permitting discharge and a further intent not to create, by the bill amending section 17a(1), a tax evasion device. Clearly the government's construction is more in line with these aims than is the bankrupt's. For on the government's construction, taxes would not be dischargeable in bankruptcy unless the taxing authority had been provided what Congress believed a realistic and fair period (three years) in which to determine and collect them. On the bankrupt's construction, to the contrary, section 17a(1)(b) could well be made, by means of the timing of a return's filing, an instrument of tax evasion. On bankrupt's construction, as the government notes, in this case the government would have had less than five months after filing of Dr. Harper's return for calendar 1969 within which to assess and collect the tax before it would have become dischargeable.

■ *But*, the bankrupt counters, if only a *timely* return will serve, the filing of a return even one day late will bar discharge forever. As the district court noted, however, a failure by the government to assess any tax within three years after the return is filed results in a bar to further collection proceedings. I.R.C. § 6501(a). Nor need we decide, in this case involving over two and one-half years delay in filing, that a substantial compliance involving only a few days tardiness would not suffice. And, after all, since discharge is in some real sense an act of legislative grace, it does not seem unduly harsh to require that a bankrupt have been at least a timely filer in order to partake of it.

In addition to the foregoing major issue, Dr. Harper presents several lesser ones for our consideration. The first four of these complain of refusals by the district court to grant motions to dismiss the appeal to it on various technical grounds. We have carefully considered these rulings of the court below and conclude that each was correct, and correct for the reasons stated by that court in its orders. Since these rulings are on well-established grounds and an opinion would as to them have no precedential value, we affirm them pursuant to Local Rule 21.

■ Bankrupt next complains that the district court committed reversible error when it refused his request to argue the case orally. Although Rule 809 of the bankruptcy rules dictates that "the parties shall be given an opportunity to be heard on oral argument," Rule 814 states that, "[i]n the interest of expediting decision or for other good cause, the district court may, by local rule or order, suspend the requirements or provisions of the rules in Part VIII, except Rules 801, 802, 803 and 810, and may also order proceedings in accordance with its direction." The advisory committee's notes on Rule 814 state that the district court may suspend Rule 809 for a particular appeal and may make an order of suspension on its own initiative.

Bankrupt notes that the present case is one of first impression and contends that oral argument would have permitted him "greater opportunity to examine the issues and seek more plausible conclusions than [that] reached by the district court without hearing oral argument." The government contends that bankrupt has failed to show that he was prejudiced in any way by the denial of oral argument. Given the district court's status as an appellate court and the narrow issue presented in this case, we conclude that the trial court did not err in denying oral argument. But even if the denial was error, surely it was harmless. *See* Bankruptcy Rule 905 (incorporating Rule 61, Fed.R.Civ.P., which provides that "[t]he court at every stage in the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Finally, Dr. Harper complains of the reversal by the district court of the bankruptcy court's discharge of his tax liability for earlier years as to which the government made no claim. The district court noted the government's contention that "only certain taxable years, 1969 through 1971, were before the court, and that the order [of the bankruptcy judge] should have been restricted to these years," agreed with this contention, and ruled that the bankruptcy judge should have restricted its rulings to the taxable years presented to him.

The government does not brief this point. Bankrupt cites section 2a of the Bankruptcy Act, 11 U.S.C. § 11(a)(2A) (Supp.1978), which states that bankruptcy courts have jurisdiction to:

> Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction  .   .   .  .

On the basis of this section of the Bankruptcy Act, bankrupt contends that a bankruptcy court has jurisdiction to determine the dischargeability of a bankrupt's tax debt, even though the United States has not filed a proof of claim or otherwise participated in or consented to the proceedings. A lower court in this circuit has ruled that the bankruptcy court does have jurisdiction to determine dischargeability without regard to whether a proof of claim is filed. *See In re Durensky,* 377 F.Supp. 798, 800 (N.D.Tex.1974), *appeal dism'd,* 519 F.2d 1024 (5th Cir. 1975). *See also In re Dolard,* 519 F.2d 282 (9th Cir. 1975) (holding that bankruptcy court has jurisdiction to determine dischargeability of tax debt "whether or not IRS had made prior claim, notice of deficiency or assessment for unpaid income tax"). We agree with these holdings. In this respect, then, the judgment of the district court must be reversed and that of the bankruptcy court affirmed. In all other respects we affirm the judgment of the district court.

AFFIRMED IN PART AND IN PART REVERSED.