In the Matter of BRUCE CONSTRUC-
TION CORP., Debtor.
In the Matter of MIAMI STATION, INC.,
Debtor.
Nos. 4682–BK, 4683–BK.

United States District Court
S. D. Florida.
May 1, 1963.

certain funds due from the United States under two government contracts. There is no dispute among the various claimants as to the facts herein, and they are consequently adopted as findings by this court.

The United States now holds the total sum of $61,382.99,[1] which sum is admittedly due by the United States under the terms of government contracts DA–08–123–ENG–1595 and DA–08–123–ENG–1792. For the sake of simplicity, these contracts will be hereinafter referred to as contract 1595 and contract 1792. Contract 1595 was entered into on September 15, 1954 between the United States and Bruce Construction Corp. and Miami Station, Inc., together with the individuals Jack S. Mintzer and Isadore L. Mintzer for the construction of certain government facilities at the Homestead Air Force Base in Florida. The two debtor corporations and the two individuals comprised a joint venture under contract 1595, but contract 1792 was subsequently entered into on April 28, 1955 between the United States and Bruce Construction Corporation only for the construction of additional facilities at the same location. The joint-venture and Bruce furnished the usual bonds as required by the Miller Act, 40 U.S.C. § 270a, with Continental Casualty Company as surety. After completion of the job some time in 1956, the debtor corporations, as well as the individuals involved, were hard-pressed to meet their commitments, and after various claims were instituted by materialmen or subcontractors, the surety entered into the matter by petition for exoneration brought in this court. Ultimately, the surety, Continental Casualty Company, was called upon to pay and did pay cer-

Ely R. Katz, Miami Beach, Fla., and John H. Gunn, Miami, Fla., for debtors.

Fred B. Ugast, Chief, General Litigation Section, United States Dept. of Justice, Washington, D. C.

CHOATE, District Judge.

This matter came before the court on petition of the trustee for the above-named debtor corporations. The petition sought determination of rights to

1. This sum is a total of the following items:

Contract 1595

 (a) $ 6,398.92—damages for taking beneficial occupancy prior to completion of certain buildings

 (b) 47,589.63—extras
 4,141.75—extras
 100.00—retainage
 $58,230.30—Total

Contract 1792

 (a) $ 561.15—retainage
 2,391.54—damages for taking beneficial occupancy prior to completion of certain buildings
 200.00—retainage
 $3,152.69—Total

tain subcontractor creditors under both contracts, amounts greatly exceeding the sum now held by the government.[2]

In early January, 1961, Petitions for Corporate Reorganization under Chapter X of the Bankruptcy Act were filed by Bruce and Miami Station. Both petitions were approved with the resultant appointment of Eugene W. Owens as trustee. Thereafter, Jack L. Mintzer, one of the individual joint venturers, was adjudicated a bankrupt with the resulting appointment of Alan B. Ives as trustee of his estate. The remaining joint venturer was Isadore L. Mintzer, now deceased.

There are four claimants to the fund. The corporate trustee claims that a portion of the fund should be paid to him for distribution to general creditors as well as an allowance for administrative expenses. The law firm of Fulton, Walter & Duncombe claim $6,611.43 of the fund as attorneys' fees for legal services which directly contributed to the creation of the fund. The United States claims the entire fund because of tax assessments to the extent of $158,585.65 [3] against the corporate debtors. The Continental Casualty Company, the surety, claims the fund as the outright legal or equitable owner thereof.

The fund is admittedly due from the government in the proportion of $58,330.30 under contract 1595, and the balance, $3,052.69, is admittedly due under contract 1792.

All of the claimants have filed their briefs in support of their claims, and the court has considered the same and has heard argument in support of such various claims.

It is, therefore,

Ordered and decreed as follows:

◼◼ The court has jurisdiction to entertain the petition of the trustee for the debtor corporations to make a deter-

2. For purposes of this hearing, Continental has claimed only on amounts awarded by final judgment in Cause 10,437-Civ-M-EC in this court, which cause was predicated upon the original contract of indemnity between the surety and principal dated April 26, 1954, and supplemented by contract of January 13, 1958, under which the surety made the following payments:

| | |
|---|---|
| January 13, 1958 | $ 1,961.69 |
| January 13, 1958 | 80,000.00 |
| January 30, 1958 | 12,500.00 |
| August 6, 1958 | 19,531.89 |
| | $113,993.58 |

3. The tax assessments as of January 17, 1963 were as follows:

### Bruce Construction Co.

| Date Assessed | Amount | Date Lien Filed |
|---|---|---|
| 9/6/57 | $ 6,694.79 | |
| 2/28/58 | 46,724.81 | 8/18/58 |
| 2/28/58 | 1,348.11 | 8/18/58 |
| 2/27/59–3/6/59 | 1,845.99 | 4/14/59 |
| 6/5/59–6/12/59 | 396.16 | 11/9/59 |
| 6/12/59 | 287.13 | 11/9/59 |
| 8/21/59 | 817.04 | 11/9/59 |
| 11/20/59 | 705.54 | 1/15/60 |
| 8/26/60 | 554.02 | |
| 11/18/60 | 442.78 | |

### Miami Station

| Date Assessed | Amount | Date Lien Filed |
|---|---|---|
| 8/6/57 | 227,398.43 | 12/23/59 |
| 2/21/58 | 46,085.70 | 8/18/58 |
| 2/28/58 | 911.03 | 8/18/58 |
| 5/1/59 | 104.65 | 6/30/59 |
| 6/5/59 | 1,964.08 | 8/13/59 |
| 8/21/59 | 1,623.20 | 11/9/59 |
| 11/20/59 | 679.34 | 1/15/60 |
| 8/19/60 | 823.53 | |
| 11/25/60 | 799.48 | |

mination of the rights to the funds now held by the government as a part of this court's general bankruptcy jurisdiction.[4] The court also has jurisdiction over the person of the parties claiming an interest in such funds. All those persons, as claimants, have voluntarily submitted themselves to the jurisdiction of this court.

■ When the surety, Continental Casualty Company, was called upon to make good under its contract of surety upon the default of the contractors as named in government contracts 1595 and 1792, that surety, by virtue of the surety contract and the Miller Act, acquired an equitable lien against any sum remaining in the hands of the government under the contracts. This equitable lien related back to the date of the contract[5]

and is superior to the government's lien for unpaid taxes which did not mature until subsequent to the date of the contract of suretyship. However, the government's right of offset is not dependent upon the priority of its lien status,[6] and its right of offset against the corporate tax debtors is recognized as hereafter stated.

■ The unpaid tax assessments of the government are against the named corporate debtors alone, no assessment having been made against the joint venturer contractor as named in contract 1595. The court recognizes that it has been established that in appropriate cases the government can exercise the common law right of debtors to offset claims of their own against their creditors, but this rule applies only to funds

4. As to the objections to jurisdiction raised by the government, it is sufficient to note that proof of claim was filed herein by the Internal Revenue Service as the Director is required to do. Fed. Tax Regs. 301.6871(a)—2(b) (1963): § 64, sub. a of the Bankruptcy Act. Such filing constitutes consent to summary jurisdiction. Only the sovereign immunity prevents affirmative relief from being granted against the United States. See Danning v. United States, 259 F.2d 305 (9th Cir. 1958), cert. den. 359 U.S. 911, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959). Here the court is not granting affirmative relief against the United States on a counterclaim, but is adjudicating within its original bankruptcy jurisdiction in allowing and establishing claims as well as set off and mutual debts. See § 2 and § 68 of the Bankruptcy Act. The fund being determined is one previously allowed and found to be due by the United States to the debtor.

5. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896).

6. United States v. Munsey Trust Co. of Washington, D. C., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). The court recognizes that it is bound by the Munsey Trust decision, but believes that the doctrine should be severely limited as it appears that any extension of it would seriously impinge upon Congressional policy expressed in the Miller Act as well as defeating its own purpose of protecting the Treasury. Thus, as every District Judge handling a volume of bankruptcy cases is aware, default by the principal on government construction is more often than not accompanied by default of the same contractor on his tax liabilities. The obvious business result is that the surety companies must either refuse to participate in Miller Act bonding or the surety premium rates must be substantially increased if the Munsey doctrine is given broad application. If bonding becomes impossible, the Congressional purpose in the Miller and allied Acts is defeated, or there is a resulting direct increase in the cost of construction to the government. There may also be predicated a lessening of competition among both surety companies and contractors as only the larger and stronger in both fields are able to survive. The indirect effect of this inherent danger in an extension of the Munsey Trust holding upon both the Treasury and free enterprise needs no elaboration here.

When the court first heard argument in this case, it was under the misapprehension that the surety had in fact taken over the job and completed it and in fact performed the extras and directly suffered the damages of early occupancy. On this basis the court was prepared to rule that the Munsey case was inapplicable. However, it appears that the surety's claim arises only on disbursement in settlement of materialmen and subcontractors' claims, and the cause must be governed by the Munsey decision.

owed to a taxpayer against whom the tax was assessed.[7] For these reasons, the government may offset its claim against Bruce Construction Corporation to the extent of the amount due this debtor under contract 1792. Further, the court concludes that the joint venture does not constitute a legal entity and that the government may likewise set off against the interest of the two corporations in the $58,330.30 due under contract 1595.

As United States v. Munsey Trust Co. is determinative of the government's right of set off, it appears that Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) governs the issue between the surety and the bankrupt's estate, as well as the representatives of the individual venturers. Thus, the surety prevails as to the remaining fifty per centum of the sum involved in contract 1595. The property interest of the surety by the contract of suretyship as heretofore stated never became a part of the bankrupts' estate for distribution to the general creditors of the bankrupt.[8]

 The awards to the government and to the surety are subject to pro-rata charge for administrative expense, both as to the claim of $6,611.43 of Fulton, Walter & Duncombe, attorneys at law, who represented the debtors and all the contractors in appellate proceedings which resulted in the awards against the government giving rise to the fund in question, and as to the corporate trustee, Eugene W. Owens, whose expenses herein have been fixed by the court at $4,482.97. The last-named sum represents six per centum of the funds under consideration, together with $800.00 attorneys fees heretofore paid as an advance to the firm of Fulton, Walter & Duncombe by the debtors. The percentage for such expenses is found to be just compensation to the trustee for its known activities required in collecting the funds. The claim of the attorneys was for amounts recognized and approved as reasonable by the court, being in accordance with the contract of employment to secure the fund.[9]

The United States shall disburse the aforesaid sum of $61,382.99 in the following manner:

The United States may retain the sum of $2,581.33 representing the proceeds of contract 1792 less the pro-rata portion of administrative expense, plus $23,853.63 representing fifty per centum of contract 1595 less the pro-rata portion of administrative expense. The sum of $6,611.43 shall be paid into the law firm of Fulton, Walter & Duncombe, 30 Rockefeller Plaza, New York City, New York. The sum of $4,482.97 shall be paid to Eugene W. Owens, trustee for the aforenamed corporate debtors, in care of his attorney, Ely R. Katz, 1701 Meridian Avenue, Miami Beach, Florida. The remainder of the fund, the sum of $23,853.63, shall be paid unto the surety, Continental Casualty Company, in care of its attorneys, Carey, Goodman, Terry, Dwyer & Austin, Seybold Building, Miami 32, Florida.

---

7. U. S. v. Kaufman, 267 U.S. 408, 45 S.Ct. 322, 69 L.Ed. 685 (1925); U. S. v. Hack, 83 U.S. 271 (8 Pet. 1834), 8 L.Ed. 941.

8. As between the surety and the parties other than the United States, the provisions of 31 U.S.C. § 203 (anti-assignment statute) are inapplicable. See Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937).

9. The government contends that the attorneys' right to their fees is precluded by the fact that their contract of employment was not in conformity with 31 U.S.C. § 203 (anti-assignment statute). However, this statute is inapplicable to this controversy inasmuch as the attorneys' original contract of employment with the debtors was adopted by the trustee and specifically approved as to terms, by this court, and they proceeded to the terminal stages of the litigation which produced the funds under specific order of the court. See this court's order of February 6, 1962. Said order was upon general hearing in open court, which was noticed to all the creditors including the government. If the United States desired to contest this order, its time for appeal has long since expired. See § 25, Bankruptcy Act.

The United States shall have a period of twenty (20) days from the date of this order in which to make the disbursements in accordance with the terms of this order.