**In the Matter of Jimmy Frank MURPHY, Bankrupt.**

No. 14357.

United States District Court,
N. D. Alabama, M. D.

Aug. 23, 1974.

See also, D.C., 355 F.Supp. 1235.

Hobdy G. Rains, Gadsden, Ala., for the bankrupt.

·Bill Bradley, R. Kent Henslee, Gadsden, Ala., for the trustee.

Andrew F. Oehmann, Jr., Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Wayman ·G. Sherrer, U. S. Atty., N. D. Ala., Birmingham, Ala., for the United States.

ALLGOOD, District Judge.

This case involves interesting and important questions in the fields of taxation and bankruptcy law and is now on its second appearance before this Court.

The matter was submitted on an agreed stipulation of facts, which though scanty, are possibly sufficient to reveal the problems involved.

Chronologically, the events were, as adopted from the stipulation, as follows:

1. "The Bankrupt, Jimmy Frank Murphy, as President of Jim Murphy Ford Sales, Inc., signed and filed with the Internal Revenue Service Form 941, Employer's Quarterly Federal Tax Returns for the first quarter of 1970, and for a portion of the second quarter of 1970. Copies of these returns are attached hereto as Exhibits 1 and 2 respectively."

*Note*: The exhibited copies of the returns filed and signed by "Jimmy F. Murphy, President" were dated April 25, 1970 and May 28, 1970 respectively.

2. "On or about May 15, 1970, the Ford Motor Credit Company attached and otherwise seized the assets of Jimmy Murphy Ford Sales, Inc., including the corporation's · inventory and bank accounts, and thereafter prohibited the Bankrupt from acting on behalf of the corporation. Although, the United States of America admits this fact, it contends that said fact is immaterial to the determination of the question of dischargeability presently before the Court."

3. "On May 14, 1971, a delegate of the Secretary of the Treasury made an assessment against the Bankrupt, Jimmy Frank Murphy, as the responsible officer of Jim Murphy Ford Sales, Inc., for the unpaid Withholding and the employees' share of the FICA taxes due from Jim Murphy Ford Sales, Inc., for the first and second quarters of the calendar year 1970. Said assessment was made in the aggregate amount of $2,809.77."

*Note*: This assessment against Jimmy Frank Murphy "as a responsible officer" was made on the authority of Section 6672 of the Internal Revenue Code of 1954, which provides that any person who is required to collect or account for or pay over such taxes and *wilfully* fails to do so shall in addition to other penalties provided by law, "be liable to a penalty equal to the total amount of the tax" not collected, accounted for or paid over.

The stipulation does not reveal that there was any finding that Jimmy Frank Murphy *wilfully* failed to pay the tax, except inferentially in the assessment of 100% of the tax against him for the Internal Revenue.

Nor is there any stipulation that the taxes were not paid by the corporation at the time of filing except as inferred· by the assessment. No copy of the assessment or the findings therein is in the record. However, as illustrated further in this opinion, the assessment, long prior to bankruptcy and not reviewed or questioned administratively, was final and had the force of a judgment fixing the liability of the bankrupt prior to bankruptcy which necessarily involved a finding of "wilful failure".

4. "On December 13, 1971, Jim Murphy Ford Sales, Inc., a corporation, filed a Petition for Adjudication, and was *adjudicated a bankrupt* on that date by this Court."

5. "On November 8, 1971, Jimmy Frank Murphy filed a petition with the Bankruptcy Court and was adjudicated a bankrupt."

6. "On February 16, 1972, this Court entered an Order of Discharge of the Bankrupt, Jimmy Frank Murphy, releasing him from all his dischargeable debts."

7. "On March 24, 1972, the Bankrupt filed an application seeking, among other things, a determination of the dischargeability of the assessments made against the Bankrupt as a responsible officer of Jim Murphy Ford Sales, Inc., for the first and second quarters of the calendar year 1970."

There are other facts and matters stipulated which are not deemed essential to the resolution of this appeal. They relate to the collections made by Internal Revenue by offset of refunds due on the 1970 and 1972 1040 Returns and levy on property or after bankruptcy earnings. The stipulation reflects after such credits the balance due Internal Revenue was the sum of $343.83, subject to adjustment for interest.

Although the amount involved in the case from a monetary standpoint is meager, nevertheless the plight of the bankrupt is one that naturally incites sympathy and tends to provoke compassion. The purpose of bankruptcy to give the bankrupt a new start in life and to free him from the burden of his debts is frustrated by a proceeding which does not discharge him from paying taxes created by a corporate enterprise which ended in financial disaster and in his personal financial ruin.

The whole problem of incurring liability as an officer of a corporation for unpaid withholding taxes is one that frequently arises again and again in bankruptcy. Transferee assessments are constantly being made in many cases of bankrupt corporations against officers or other "persons" responsible for the payment of withholding taxes. It is not uncommon for insolvent going concerns to meet the payroll, minus the tax deductions, in order to keep the labor force happy. Usually no provision is made for the payment of the tax which has been by bookkeeping deducted from the employees. This is done because funds are obtained sufficient to meet the *net* payroll, but not enough to create an actual trust fund for the amount due Internal Revenue. There is in such cases, not an actual diversion, but rather a failure to set aside the tax money. There is a duty on each taxpayer to create and honor the trust fund at the time each payroll is met. Failure to act to this end constitutes a "wilful failure" where several payrolls are made.

No real contention is presented that Jimmy Frank Murphy was not a "person" charged with this duty or that he did not wilfully fail to comply with Section 6671 of the Internal Revenue Code.

No funds or estate were created in either the bankruptcy of the corporation or in his individual case. The assumption would have to be made that he was legally liable for the assessment as a penalty against him, and that it remained unpaid at the time of his discharge in bankruptcy.

After his discharge was granted, but before the case was closed, the bankrupt sought to have the Bankruptcy Court determine that his liability under the assessment was cancelled by the discharge and by petition sought to make Internal Revenue a party defendant by adversary proceeding.

The Internal Revenue immediately countered with the contention that his petition was a suit against the United States and that it could not be made a party and the Court lacked jurisdiction because it had not previously filed a claim or entered an appearance in the case. It also asserted that the bankrupt's liability was non-dischargeable in bankruptcy.

The contention that the Court lacked jurisdiction to hear and determine the legality and amount of the tax involves Section 2a (2A) of the Bankruptcy Act.

It is true that when the above subsection was added by amendment in 1966 that the statement was made before the Senate Judiciary Committee that it was not the intent of the amendment to extend to the Bankruptcy Court the power to adjudicate a federal tax "which has not been asserted in the bankruptcy proceeding by the filing of a proof of claim."

This statement seems to run counter to the plain wording of Section 2a (2A), which was adopted by Congress in the following language in spelling out and declaring the jurisdiction of the Bankruptcy Court, viz:

"(2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or nót paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review."

If this question was squarely presented and the matter had not been adjudicated to final judgment or reached the stage of judicial or administrative assessment, it would appear that the Bankruptcy Court would have jurisdiction to hear and determine the amount of the tax due by the bankrupt on taxes accruing prior to bankruptcy, whether the Director had filed a claim or not. Administration of the bankruptcy estate many times cannot proceed until tax liabilities are determined. Taxes consume a large portion of bankruptcy distribution and it is essential that determination of amount and legality of taxes be made.

Rule 303 of Rules of Bankruptcy Practice provides:

"*Filing of Tax and Wage Claims by Bankrupt.* If a creditor having a provable claim for taxes or wages fails to file his claim on or before the first date set for the first meeting of creditors, the bankrupt may execute and file a proof of such claim in the name of the creditor. Such claim shall be treated as a filed claim only for purposes of allowance and distribution. The court shall forthwith mail notice of such filing to the creditor and to the trustee. The creditor may nonetheless file a proof of claim pursuant to Rule 302 which proof when filed shall supersede the proof filed by the bankrupt."

The cases cited by the Government have to do with taxes accrued by the Trustee and where the Trustee is the taxpayer. In such cases the Trustee has to proceed like any other taxpayer.

However, all this is beside the point involved in this case. This matter involves an interpretation of Section 17 of Bankruptcy Act, and the authority there granted, and not Section 2a (2A). In this case the assessment was made prior to bankruptcy and became final and fixed and was not contested. The amount and legality of the tax is not in question.

The point is not that bankrupt was not legally liable, but that his liability was discharged by bankruptcy. This falls under the Dischargeability Act of 1970.

The Bankruptcy Judge ruled that the assessment of the corporation taxes against Jimmy Frank Murphy was a penalty (as Section 6672 clearly defines it). Therefore he ruled that a penalty being non-provable, the liability to pay was discharged and the Director no longer had a right to collect the tax.

This reasoning is faulty on two grounds.

■ First, a non-provable debt is non-dischargeable by Section 17.

■ Second, the penalty arising under Section 6672 is provable because it represents a pecuniary loss to the United States.

Thus, the bankrupt loses on either position.

■ The Bankruptcy Judge ignored or refused to follow the cases hereinafter cited, furnished in the very fine briefs submitted by the District Attorney.

The case of Sherwood v. United States, D.C., 228 F.Supp. 247 is very much in point and though the question is presented by bill to remove cloud on title, seems to be on all fours with this case, and herein is cited a portion of the opinion:

"An officer of a corporation who has a duty to collect taxes for the Government and who wilfully fails to do so is in the same position as the corporate employer itself. This liability is not a penalty as that term is generally used, but in reality is a liability for a tax originally imposed upon the corporation and shifted to the corporate officer upon his default. Being a tax due from the bankrupt to the United States, this penalty was therefore not dischargeable under Section 17.

"Accordingly, the case will proceed to determine whether or not Sherwood was under the duty to collect and pay over said taxes and if so, whether he wilfully violated this obligation." (p. 251)

In Botta v. Scanlon, 2 Cir., 314 F.2d 392, the Court further upheld the right of the Government to collect the tax in this language:

"There may be some doubt about the ultimate liability of appellant Montagni, since it is alleged that he was not at any time an officer or employee of the bankrupt corporation and § 6671(b) of the Code states that the word 'person' as used in § 6672 'includes an officer or employee of a corporation * * *.' But Montagni was a substantial stockholder of the corporation, and for aught that appears in the complaint he may also have been a director. It may well be that the reference to officers and employees in § 6671(b) is exemplary and not exclusive. In United States v. Graham, 309 F.2d 210 (1962), the Ninth Circuit held that a director could be liable under § 6672, saying that the word 'person' was not strictly limited to officers and employees, but included 'all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred.' Id. at 212. We need not decide that question now. It is sufficient that the appellants have not met the requirement of showing that under a view of the law most favorable to the government, it cannot establish its claim. No more is required of the government than that it act in good faith. Williams Packing and Navigation Co. [Enochs v. Williams Packing & Navigation Co.], supra, 370 U.S. [1] at 7 [82 S.Ct. 1125, 8 L.Ed.2d 292]. Since the appellants have not shown that the government has not so acted here, their complaint was properly dismissed." (p. 394)

The case of Westenberg v. United States, D.C., 285 F.Supp. 915, is to the like effect.

It is apparent that the order appealed from is in error and that the Director was under a duty to collect the taxes assessed despite the discharge in bankruptcy of the taxpayer, and the order is set aside and vacated, and this case is reversed and remanded to the Bankruptcy Judge for further orders consistent with this opinion.