In the Matter of Benjamin EPSTEIN, a/k/a Ben Epstein, a/k/a Benjamin K. Epstein, Bankrupt.

Benjamin EPSTEIN etc., Plaintiff-Appellee,

v.

UNITED STATES of America INTERNAL REVENUE SERVICE, Defendant-Appellant.

No. 73 B 913.

United States District Court, E. D. New York.

June 24, 1976.

---

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., by Gerald C. Miller, Trial

Atty.—Tax Div., U. S. Dept. of Justice, Washington, D. C., Lewis F. Tesser, Asst. U. S. Atty., New York City, for defendant-appellant.

Otterbourg, Steindler, Houston & Rosen, P. C., New York City, by Conrad B. Duberstein, M. David Graubard, New York City, for plaintiff-appellee.

### MEMORANDUM AND ORDER

BRAMWELL, District Judge.

This is an appeal from an order of the Bankruptcy Court denying the Government's motion to dismiss. This Court finds the ruling of the Bankruptcy Judge proper and affirms its decision.

The bankrupt, Benjamin Epstein, filed an application with the Bankruptcy Court to determine the dischargeability of a debt allegedly owed to the Internal Revenue Service. Notice of Trial was issued directing the appearance of the Internal Revenue Service for trial. In response, the Government filed a motion to dismiss on the ground that the Bankruptcy Court lacks jurisdiction to determine the dischargeability of Federal taxes where the Internal Revenue Service has not filed a proof of claim nor has otherwise participated in the bankruptcy proceedings, except to object to the Bankruptcy's Court's jurisdiction.

On March 12, 1974, Bankruptcy Judge William J. Rudin found that the Bankruptcy Court had jurisdiction to determine the dischargeability of Federal tax liabilities. This decision was included in the Court Order of March 27, 1974. Thereafter, the Government brought this appeal.

Both parties agree that the sole issue presented here is whether the Bankruptcy Court has jurisdiction to determine the dischargeability of debts owed to the Internal Revenue Service for which no proof of claim has been filed.

Section 2a(2A) of the Bankruptcy Act, 11 U.S.C. § 11(a)(2A), an amendment enacted in 1966, provides that Bankruptcy Courts are vested with jurisdiction to

> [h]ear and determine, or cause to be heard and determined, any question arising as to the amount of legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction  .   .  . .

Furthermore, Section 17 of the Act was amended in 1970 to include subsection c(1) [11 U.S.C. § 35c(1)], which provides:

> [t]he bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt.

Appellee Epstein contends that the statutory language of Section 17 is not limited to claims filed by the Government in a Bankruptcy Proceeding but rather covers all debts of the bankrupt. He asserts that taxes are therefore included irrespective of whether the taxing authority has filed proof of claim.

However, the Government contends that the doctrine of sovereign immunity and the limited jurisdiction of the Bankruptcy Court precludes jurisdiction of the Bankruptcy Court, it argues that the 1966 and 1970 amendments were not intended to change the basic principle that sovereign immunity is not waived unless the Internal Revenue Service files proof of claim or otherwise participates in the proceeding. The Government further alleges that the intent of Congress as expressed in Section 7401 of the Internal Revenue Code of 1954[1] (26 U.S.C. § 7401) would be frustrated if this court were to hold that the Bankruptcy Court has jurisdiction here in that the Treasury and Justice Departments would then lose control over bringing civil actions to collect taxes.

Turning first to § 2a(2A), this Court is in agreement with the numerous scholars and

---

1. Section 7401 states that no civil action for the collection or recovery of taxes, or of any fine, penalty or forfeiture, shall be commenced unless the secretary or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

jurists who have exhaustively researched the legislative history of this section and found it to support the Bankruptcy Court's jurisdiction to determine the dischargeability of unpaid taxes regardless of the filing of proof of claim. *See e. g., Bostwick v. United States of America,* 521 F.2d 741, C.C.H.Bankr.L.Rep. ¶ 65,766 (8th Cir. 1975); *Gwilliam v. United States of America,* 519 F.2d 407, C.C.H.Bankr.L.Rep. ¶ 65,748 (9th Cir. 1975); *In the Matter of Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir. 1969); *In re Murphy,* 381 F.Supp. 813 (N.D.Ala.1974); *In re Durensky,* 377 F.Supp. 798 (N.D.Tex. 1974); 3A *Collier on Bankruptcy ¶ 64.407[3] at 2234–35 (14th ed. rev. 1972); Countryman, The New Dischargeability Law,* 45 Am.Bank.L.J. 32–33 (Winter 1971); Kennedy, *The Bankruptcy Amendments of 1966,* 1 Ga.L.Rev. 149, 159 n. 41, 172–73 (1967).

On first glance, the legislative history of the provision appears to support the Government's contention that Congress did not intend to waive the sovereign immunity of the United States. A report of the Senate Finance Committee stated:

> * * * This committee understands that this amendment makes no change in present law under which a bankruptcy court cannot adjudicate the merits of any claim, including a Federal tax claim, which has not been asserted in the bankruptcy proceeding by the filing of a proof of claim.

*See In re Statmaster Corp.,* 465 F.2d 978 (5th Cir. 1972); *In re O'Ffill,* 368 F.Supp. 345 (D.Kan.1973).

However, in the leading case of *In re Durensky,* 377 F.Supp. at 801–805, Judge Mahon, relying upon the observations of various bankruptcy experts,[2] found that:

> A review of the legislative history relative to § 2a(2A) and its companion amendments reveals that the statement of the Senate Finance Committee that is herein given emphasis by the Govern-

ment appears in the closing paragraph of the last section of the majority views of Senate Report No. 999. The statement is made under the concluding general topic, "Comments on Other Provisions of the Bill," not under the more specific section captioned "Discharge of Texas" wherein H.R. 3438 (encompassing the § 2a(2A) amendment) was addressed. In fact, the Senate Finance Committee's recommendations on H.R. 3438 appeared in Senate Report 998, not Senate Report No. 999, and though the Finance Committee discussed its recommendations on both H.R. 3438 and H.R. 136 in Senate Report No. 999, its views relative to H.R. 3438 were not adopted and its recommendations relative thereto were expressly rejected. * * * Id. at 801.

This interpretation of the legislative history has been adopted by every court that has reviewed this matter since the *Durensky* decision was rendered. *Bostwick v. United States, supra,* 521 F.2d 741, C.C.H. Bankr.L.Rep. at ¶ 65,766, *Gwilliam v. United States, supra,* 519 F.2d 407, C.C.H.Bankr. L.Rep. at ¶ 65,748. It is thus clear that there exists ample authority rejecting the Government's interpretation of 2a(2A) and upholding the plain meaning of the amendment. In reliance thereon, this Court finds that the Bankruptcy Court has jurisdiction over the Internal Revenue Service in the instant case.

In respect to Section 17(c), it is to be noted that the Bankruptcy Act was amended in 1970 to include Section 17(c), which permits the bankrupt to file an application to determine the dischargeability of any debt. It is clear that the statutory language is not limited to those claims which have been filed by creditors.

One reason for this amendment was to supply the petitioning debtor with an early indication of which claims will survive his discharge in bankruptcy.

---

2. 3A Collier, Bankruptcy, ¶ 64.407(3) at 2234 (14th ed. rev. 1972); Countryman, *The New Dischargeability Law,* 45 Am.Bankr.L.J., 32–33 (1971); D. Cowans, Bankruptcy Law and Practice, § 433 at 102 (Supp.1973); Kennedy, *The Bankruptcy Amendments of 1966,* 1 Ga.L. Rev. 149, 172–73 (1967); W. Plumb, Report on Federal Income Tax Returns and Liabilities in Bankruptcy at 127, reprinted in Report of the Commission on Bankruptcy Laws of the United States, Part III (1973).

The real effect of § 17c(1) is to permit the bankrupt to bring the issue before the Bankruptcy Court and to get an early determination as to whether a particular debt is or is not subject to the discharge 1A *Collier on Bankruptcy* 14th ed. ¶ 17.-28(A)[2], p. 1738.

As to jurisdiction over this debt, Collier continues by explaining that "[i]f no action is pending on the debt the application may clearly be filed in the Bankruptcy Court by either party." 1A *Collier, supra,* ¶ 17.-28(a)[2], p. 1738. It is therefore clear that permitting the contention of the Government to become the law would be severely undermining the purpose of the 1970 amendment. The Government, however, contends that the 1970 change in the statute did not affect the principle of sovereign immunity. In effect, it is argued that no change has taken place in the law regarding the issue in this case. This analysis has not been adopted by either the scholars or the courts. *Collier on Bankruptcy* states that "[s]ubdivision c, . . . empower[s] the bankruptcy court to determine the dischargeability of particular debts, a type of jurisdiction not generally possessed prior to the amendments of 1970." 1A *Collier, supra,* ¶ 17.01(3.3), at 1580.1. Although the amendments do not directly address themselves to the waiver of sovereign immunity, by enacting this change into law, Congress has in effect assented to the jurisdiction of the Bankruptcy Court for nondischargeability applications brought pursuant to Section 17 of the Bankruptcy Act. *See In re Murphy,* 381 F.Supp. 813 (Bankr.Ct., N.D.Ala.) 48 *American Bankruptcy Law Journal* (Fall 1974 at 394), remanded on other grounds, 355 F.Supp. 1235 (N.D.Ala., 1973), rev. on other grounds, 381 F.Supp. 813 (N.D.Ala., 1974); *In re McKenzie,* CCH Bankruptcy Law Reporter, ¶ 65,702 (Bankr.Ct., S.D.Ill. 1974).

Moreover, a closer look at the seminal *Durensky* decision, *supra,* discloses a fact situation nearly identical to the one at bar. There, the Internal Revenue Service failed to file a claim and Durensky sought none-theless to determine the dischargeability of the debt under Section 17c. That court found "little difficulty in concluding that jurisdiction does lie to determine dischargeability without regard to whether a proof of claim is filed." 377 F.Supp. at 800. *Accord In re Halverson,* 3 Collier Bankr. Cases 676, (Bankr.Ct., N.D.Ill.1975).

Similarly, in *Gwilliam v. The United States, supra,* the facts were parallel to and the sole issue identical to that of the instant case. Again, the IRS failed to file a claim or other proof. There, the Court of Appeals for the Ninth Circuit unequivocally held that

> the Bankruptcy Court has jurisdiction . . . to adjudicate the Bankrupt's indebtedness . . . to be discharged in bankruptcy, notwithstanding the lack of a prior claim therefor or other proof thereof by IRS.

519 F.2d at 411. CCH ¶ 65,746 at p. 75,478. The Court reasoned that:

> It is manifest to us that the purpose of Congress in enacting § 35(c) was to provide both the bankrupt and IRS with the option to utilize the bankruptcy court forum in which the effect of the discharge of a federal tax indebtedness could be definitely determined and adjudicated in a uniform fashion and to grant the bankruptcy court with jurisdiction for that purpose. To conclude that the above option in favor of the Bankrupt could be utilized only if the IRS has filed a claim for the unpaid tax would distort and render meaningless the clearly expressed congressional language. (Citations omitted).

Cases cited by the Government in support of its position on sovereign immunity are either from the period prior to the 1966 and 1970 amendments, e. g. *In re Bruce Construction Corporation,* 217 F.Supp. 926 (S.D. Fla.1963), or deal with a related but not identical issue, e. g. *In re Nixon,* 74–1 U.S. T.C. ¶ 9226 (D.Kan., 1973); or fall within a distinct minority viewpoint. *In re Zook,* 74–1 U.S.T.C. ¶ 9399 (D.C.Cal.1974).

Finally, the Government argues that the purpose of § 7401 of the Internal Revenue

Code of 1954 (26 U.S.C. § 7401) would be thwarted by recognizing the jurisdiction of the Bankruptcy Court in cases such as the one at bar. Section 7401 limits the responsibility to bring an action to recover taxes to the Attorney General upon the authorization and request of the Secretary of the Treasury. The IRS contends that the government will lose control of the bringing of lawsuits to collect taxes if the jurisdiction of the Bankruptcy Court can be invoked by the taxpayer himself. However, it appears obvious that after the bankrupt has acted, the Departments of Treasury and Justice may then decide whether or not they intend to pursue the matter. Moreover, if the concern is over the competence of referees to handle tax cases, or the wisdom of burdening them with such cases, Congress seems to have resolved that issue in 1966 when it added § 2a(2A) giving the bankruptcy courts jurisdiction to "hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax . . which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal . . . ." —a provision which seems applicable to questions of tax liability committed to the bankruptcy court by § 17c(3). Countryman, *The New Dischargeability Law* 45 Amer. Bank.L.J. 1, 32–33.[3]

In light of the foregoing this Court holds that the Bankruptcy Court has jurisdiction to determine the dischargeability of debts owed the Internal Revenue Service for which no proof of claim has been filed. It is SO ORDERED that the decision of the Bankruptcy Court in the matter of Benjamin Epstein is affirmed.

3. The Government also points to the huge increase in Bankruptcy petitions. Since the IRS does not ordinarily participate in the "no asset" cases, it is argued that a holding here that will force the Government to become involved in these cases will waste time and effort. However, the Government admits that no precise figures have been developed to show how many cases would be affected by such a change. A case such as this, where the letter of the law appears clear, should not be decided upon a speculative policy argument.