In re Oliver Morgan ANDERSON, Jewell Marie Anderson, Route 2, Box 541, Haysi, Virginia 24256, Debtors.

Oliver Morgan ANDERSON, Plaintiff,

v.

UNITED STATES of America DEPARTMENT OF the TREASURY/INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 7–87–00934–HPB–7.
Adv. No. 7–87–0314.

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

Aug. 30, 1994.

Robert T. Copeland, Copeland, Molinary & Bieger, Abingdon, VA, for debtor/plaintiff.

Stuart Fischbein, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, and Joseph Mott, U.S. Atty., Roanoke, VA, for defendant.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether or not this Court should abstain and dismiss

the within Adversary Proceeding or hear and determine whether or not the asserted tax liability is dischargeable if the Plaintiff/Debtor is first found to be a responsible individual within the purview of § 6672 of the Internal Revenue Code.

Oliver Morgan Anderson ("Debtor" or "Plaintiff") filed this Adversary Proceeding under Rule 7001 seeking a determination by this Court of the dischargeability of tax liabilities asserted by the Internal Revenue Service ("IRS") in the sum of approximately $284,583.10. The Plaintiff alleges that he is not a responsible individual within the meaning of § 6672 of the Internal Revenue Code who was responsible for paying over tax due monies for Fox Ten Mining Corporation. IRS filed as a response thereto a Motion to Dismiss and a Motion that this Court abstain from hearing the issues raised in the complaint. In a memorandum attached thereto, the Internal Revenue Service states that the grounds for its motion are that this is a no asset Chapter 7 case, that the Debtors have already received their discharge, that the Internal Revenue Service has not filed a claim in the case, and that the Debtor has available other forums in which to litigate these issues such as the United States District Court in a tax refund suit or the Tax Court of the United States. The Internal Revenue Service further states that the Plaintiff/Debtor does not have standing to contest his tax liability in this no asset case. Thereafter, the Internal Revenue Service asserted additional tax liabilities against the Debtor in excess of $44,000.00 under § 6672, as a result of which the Debtor moved to amend the complaint to include said sum which was granted and the amended complaint was filed herein. Thereafter, the Internal Revenue Service filed a further second Motion to Dismiss the amended complaint alleging additional grounds that the assessments have no relationship to this bankruptcy proceeding and that, by considering such issues, the Bankruptcy Court hinders the closing of the bankruptcy case rather than expediting the closing as Congress intended and that the Plaintiff/Debtor should pursue his remedies in other forms. In a memorandum attached thereto, the Internal Revenue Service cites cases and authorities holding that this Court, as a matter of discretion, should abstain.

In the citation of authorities, the Internal Revenue Service cites 11 U.S.C. § 505(a) and acknowledges that this section grants this Court jurisdiction to determine the legality of any tax. However, the Memorandum of Authorities cites several cases in which the discretion of the Court had been exercised in favor of abstention.

Thereafter, the Internal Revenue Service filed a further supplemental memorandum in support of its Motion to Dismiss and Abstain citing additional authorities, including a recent case of *In re Queen,* 148 B.R. 256 (S.D.W.Va.1992), which was appealed to the Fourth Circuit Court of Appeals. In the *Queen* case, the bankruptcy court had exercised its discretion to favor abstention since there was no assets being administered in the case. Although the bankruptcy court had held that it had jurisdiction under 11 U.S.C. § 505 to determine the tax liabilities, it elected under the specific facts of the case not to do so and to abstain. The Fourth Circuit Court of Appeals rendered its decision on January 20, 1994 in an unpublished opinion. The Fourth Circuit sustained the bankruptcy court's ruling that it had not abused its discretion and that its discretion was properly exercised in that particular case. This Court notes that the unpublished opinion under the rules of the Fourth Circuit (IOP 36.6) indicates that this decision is not to be considered precedent, but governs only the issues set forth in the case at bar. The court of appeals agreed with the bankruptcy court and the district court that the bankruptcy court had full jurisdiction under 11 U.S.C. § 505 to adjudicate the tax liabilities; however, under the facts in this case the bankruptcy court exercised its discretion and the ruling would be affirmed.

It is clear from the foregoing that the Internal Revenue Service, as well as the Fourth Circuit Court of Appeals in its decision of the *Queen* case, recognized that this Court had jurisdiction under 11 U.S.C. § 505(a) to hear and determine the amount or legality of any tax including the tax in question; and that the Motion to Abstain is

not directed at the Court's lack of jurisdiction but instead is directed at the Court's discretion in a particular case to abstain from hearing the matters in question. It seems that most of the decisions cited concentrate on the issue of the administration of the bankruptcy estate. If there are no assets to be distributed, then it necessarily follows that there is nothing more to be done in the Debtor's case once he is issued a discharge. That premise simply overlooks the entire substance of the Bankruptcy Reform Act or Code of 1978. Congress, in this total revision of the bankruptcy laws of the United States, as incorporated in the Bankruptcy Reform Act of 1978, extensively broadened the jurisdiction of this Court in many fields and specified in broad terms the jurisdiction of this Court to administer cases in behalf of the Debtor, creditors, and all others having matter to be determined. In § 105 the Code provides, under the power of the Court designation, broad jurisdictional authority to adjudicate and determine issues coming before the Court and arising under the Rules and the Code. The Congress provided broad language in § 105 that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Among the provisions of broadened jurisdiction of this Court was § 505 which provides, and the IRS agrees, that this Court has jurisdiction to determine the amount and legality of any tax, any fine or penalty relating to a tax, or any addition to tax whether or not previously assessed and so forth. It would seem that the Internal Revenue Service would welcome the opportunity to litigate in a forum that would be less time consuming and more expeditious in the resolution of the issues involving taxpayers' tax liabilities. This would seem to be a desirable approach in rendering service to the citizens and taxpayers of this country. That does not seem to be the case in view of the many cases that the IRS has filed Motions to Abstain solely because there are no assets in the case.

▆ In this case, the issue simply is whether or not this Debtor owes the tax liability that has been assessed—not whether it should be litigated in another court. If the Debtor owes the tax liability and is not discharged therefrom, that should be so determined here. If the Debtor does not owe the tax liability, then in order to grant this debtor a fresh start, he is entitled to have this matter decided in this Court and determined whether or not he, in fact, owes the tax under § 6672. This has nothing to do with the distribution of property in this case or the administration of assets. It is simply a question of whether or not this Debtor is liable as a responsible person under § 6672. In the exercise of discretion in matters of this kind, the Court should be mindful that not only must the Court administer the case and disposition of assets but the Court must also be mindful of the fresh start to which debtors are granted and which was mandated in the new Code having been carried over from the prior Act.

▆ In considering these issues as an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the Debtor. *See Williams v. USF & G*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Roberts v. W.P. Ford & Son*, 169 F.2d 151, 152 (4th Cir.1948) (citing *Johnston v. Johnston*, 63 F.2d 24, 26 (4th Cir.1933) and *Lockhart v. Edel*, 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized purpose serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233, 241 (1971); *Local Loan v. Hunt*, 292 U.S., at 244, 54 S.Ct. at 699; *Johnston v. Johnston*, 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper*, 26 F.2d 585, 587 (4th Cir.1928).

Sections 105, 505, and 506, as well as Rules 4004 and 7001, as well as all other Code sections and Rules, substantially broadens

and implements the procedure which was the basic pre-Code law in 1978. *See Seaboard Small Loan, etc. v. Ottinger,* 50 F.2d 856 (4th Cir.1931).

The *Seaboard* case, although it does not deal with tax determinations, is relevant because it instructs this Court as to its jurisdiction and responsibility relating to issues affecting debtors in cases pending before it. Creditor sought to subject post-petition wages of a debtor to the lien of assignment on a discharged debt. The late distinguished Judge, and later Chief Judge, Parker, in holding that such acts were enjoinable and prohibited as no lien existed, wrote:

Coming to the question of jurisdiction, we entertain no doubt as to the power of the court below to grant the relief prayed. The Bankruptcy Act § 17 expressly provides that, with certain specified exceptions, a discharge in bankruptcy shall release a bankrupt from all of his provable debts. 11 U.S.C.A. § 35. And as said by the Supreme Court in *Chicago, B. & Q.R.R. v. Hall,* 229 U.S. 511, 515, 33 S.Ct. 885, 886, 57 L.Ed. 1306, it was "intended not only to secure equality among creditors, but for the benefit of the debtor in discharging him from his liabilities and enabling him to start afresh with the property set apart to him as exempt." "The determination of the status of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern," said Chief Justice Fuller in *Hanover Nat. Bank v. Moyses,* 186 U.S. 181, 192, 22 S.Ct. 857, 862, 46 L.Ed. 1113.

In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves *trouble, embarrassment, expense, and possible loss of employment.* A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant. The demand under an assignment order, in an effort to collect a debt discharged by bankruptcy, is nothing less than an attempt to circumvent the order discharging same and to deprive the bankrupt of the benefit of that order. It was to meet situations such as this that the bankruptcy court was vested with the general power under section 2, subsection 15 of the Bankruptcy Act (11 USCA § 11(15) to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title." As said by Judge Van Valkenburgh in the *Swofford Bros. Dry Goods Co.,* Case (D.C.) 180 F. 549, 553: ". . . This section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law; provided the court of bankruptcy otherwise has jurisdiction of the person or the subject-matter. For such purposes the court has the plenary powers of a court of equity and can exercise the powers of such a court for the ascertainment and enforcement of the rights and equities of the various parties interested in the estate of the bankruptcy company."

In the case of the *Home Discount Company, supra,* [ (D.C.) 147 F. 538], it was held directly that the court had the power exercised by the court below, and the discount company was fined for contempt of court because it failed to withdraw a notice of assignment filed with the employer of bankrupt. What was said by Judge Jones in that connection is pertinent here. Said

he: "The filing of the assignment of the wages with the bankrupt's employer the day after the adjudication was an effort to embarrass the administration of the estate, and to force the bankrupt by the sore pressure caused by withholding the wages to pay an illegal demand, from which a discharge would free him. It was nothing more than an effort to starve him into abandonment of his right under the law, in defiance of the orders made to enforce those rights. If a court of bankruptcy has no power to prevent creditors from making such use of assignments of wages, it had as well shut its doors, and abandon all effort to vindicate the rights which the statues commit to its protection. The law does not make such weaklings of courts of bankruptcy. They have ample power to protect the bankrupt in the enjoyment of all his rights, and to frustrate the efforts of those who seek to defeat the practical enjoyment of them." 50 F.2d at 859–860. (emphasis added)[1]

The foregoing text is recited fully because it dramatically points out the pre-Code law, and nowhere did the Congress demonstrate an intent or effort to dilute the debtor's rights and benefits under the new Bankruptcy Code. To hold otherwise is to relegate the Code language to congressional redundancy. The legislative history clearly shows that Congress intended to strengthen and broaden debtor's rights to a fresh start and to endow this Court with the power to do so. This is clear from the § 362 automatic stay and the injunctive provisions in the discharge order which eliminated any need of the debtor from having to proceed in state or other court to obtain relief. See Va.Code § 8.01–455.

Accordingly, under present Rules and Code provisions, it is unnecessary for debtors to litigate equity injunction proceedings as in *Seaboard* to effect their rightful remedies. Congress provided that the discharge order shall enjoin unsecured, discharged creditors from so proceeding. Also, it gives this Court the power referred to in *Seaboard* to adjudicate whether or not a creditor's claim is a valid claim—priority, secured, or unsecured—and, hence, discharged under the discharge order; and whether the claim or obligation is, in fact, owing, which is an issue here under § 6672.

This Court's attention is drawn to a case in which abstention was denied. *See In re Witte*, 92 B.R. 218 (Bankr.W.D.Mich.1988), wherein the Court stated at page 222 as follows:

> The IRS has also asked the court to abstain in order to allow the IRS to make its own determination as to the qualification of the plan. Under 28 U.S.C. § 1334(c)(1) this court may abstain "in the interest of justice." I do not see how the interests of justice will be served by abstention. The debtor has sought relief from this court and is entitled to a decision as to whether or not he is entitled to the relief he seeks. The IRS has asked for abstention in order to allow it to determine for itself whether the Witte plan remains qualified. However, it would appear that the IRS has already made a determination, for it has adamantly maintained throughout this proceeding that the invasion of the Witte plan has violated the plan's prohibition against alienation, which thereby cost the plan its ERISA-qualified status. Admittedly, the usual IRS disqualification procedures have not been followed. In fact, I am unaware of any pending judicial or administrative proceeding to which I could defer. Were I to abstain, it might be years before the debtor learns whether his profit-sharing plan remains ERISA-qualified, if ever. By that time, the debtor may find that if the plan has been disqualified he has accrued a far greater tax liability than he would have had he learned of that result today.

11 U.S.C. § 305 governs abstention in this Court. In the exercise of discretion as to whether or not to abstain from hearing and dismiss the case such as the one before the Court here, the Court must, after hearing on notice, determine whether the interest of

---

1. Judge Parker's demonstrated concern about discriminatory treatment of debtors was specifically and broadly dealt with by the Congress in 11 U.S.C. § 525, which is simply one additional broadening jurisdictional grant to this Court under the 1978 Code.

creditors *and the debtor* would be better served by such dismissal or suspension; ...." (emphasis added). Accordingly, the fact that there are no assets in this case should not be a determining factor as to whether or not this Court abstains. Section 305 provides that not only creditors' but the debtor's interest must be considered. The Debtor here has sought relief in this Court asking this Court initially to determine whether or not this Debtor, in fact, owes the tax in question. In order to grant this Debtor a fresh start, it is necessary that that matter be here determined. Accordingly, the IRS Motion to Dismiss and Abstain is denied. An Order will be entered accordingly.

Service of a copy of this Memorandum Opinion shall be made by mail to the Debtor; counsel for Debtor/Plaintiff; counsel for Defendant; Trustee; and U.S. Trustee.