**In re Barry SHAPIRO and Nancy J. Shapiro, Debtors.**

**Barry SHAPIRO and Nancy J. Shapiro, Plaintiffs,**

v.

**UNITED STATES of America–Internal Revenue Service, Defendant.**

**Bankruptcy No. 95–11405F.**
**Adv. No. 95–0306F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 24, 1995.

Karl J. Fingerhood, Trial Attorney, Tax Division, Office of the United States Attorney, U.S. Department of Justice, Washington, D.C., for defendant.

David A. Kasen, Kasen, Kasen & Braverman, Philadelphia, PA, for debtors/plaintiffs.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The debtors, Barry and Nancy Shapiro, have filed an adversary proceeding seeking a determination of their prepetition federal tax liability under section 505 of the Bankruptcy Code, along with a determination of the dischargeability of this debt under section 523. The defendant United States filed an answer, and later a motion for summary judgment, which was coupled with a request to abstain. The debtors responded with a cross-motion for summary judgment, which included their opposition to abstention.

As will be discussed, the parties have resolved between themselves all issues concerning dischargeability. What remains is the debtors' request that I fix the amount of their non-dischargeable tax debt, and the defendant's request that I abstain from so doing. At bottom, the United States contends that a bankruptcy court should exercise its discretion and refrain from determining the non-dischargeable tax liability of chapter 7 debtors when, as in this instance, the chapter 7 case has been determined by the chapter 7 trustee to be a "no-asset" case; that is, when there are no non-exempt assets available for distribution to creditors. Conversely, the debtors maintain that a bankruptcy court should exercise its statutory authority to determine the amount of their tax liability which will not be discharged

when, as in this instance, the chapter 7 debtor can no longer seek review in the United States Tax Court.

For the reasons set forth below, I conclude that it is appropriate to abstain from fixing the debtors' prepetition non-dischargeable tax liability.

## I.

The following facts are not in dispute.

Mr. and Mrs. Shapiro filed a voluntary petition in bankruptcy under chapter 7 on February 24, 1995. Michael Kaliner, Esquire was appointed interim chapter 7 trustee by the United States trustee pursuant to 11 U.S.C. § 701. The debtors' bankruptcy schedules disclosed that they owned no property which was available for distribution to creditors by the trustee. Accordingly, notice was sent to all creditors that no proofs of claim need be filed. Fed.R.Bankr.P. 2002(e). On April 28, 1995, the interim trustee presided over a creditors' meeting in accordance with section 341(a). As no permanent trustee was elected, the interim trustee was placed in that role. 11 U.S.C. § 702(d). The chapter 7 trustee promptly filed a report disclosing that no assets were available for distribution to creditors.

The debtors thereafter filed the instant complaint. They assert that the Internal Revenue Service "has pursued the debtors for alleged tax liabilities claimed by the defendant to be in excess of one million dollars." Complaint, ¶ 6. The debtors request that this bankruptcy court determine the amount of their federal tax obligation, if any, which is not dischargeable, as well as determine the dischargeability of their federal tax obligations.

The United States and the debtors filed cross-motions for summary judgment. Neither the motions nor accompanying attachments disclose the amount of the federal tax claim, although it appears that liability is based upon allegedly unpaid federal income taxes as well as taxes due pursuant to 26 U.S.C. § 6672.

At the hearing held on these motions for summary judgment, the parties stated that they had reached an accord on the issue of dischargeability only, and they submitted a consent order to that effect. Under this consent agreement, the parties agree that the debtors have no federal tax liabilities for the years 1982 and 1983. Furthermore, the debtors' federal income tax obligations for the years 1980, 1981, 1984, 1985, 1986, 1987, and 1988 are conceded by the IRS to be dischargeable. Conversely, the debtors acknowledge that their federal income tax obligations for the years 1989, 1990, 1991, 1992, 1993, and 1994 are non-dischargeable. In addition, the husband/debtor's section 6672 tax liability based upon assessments made on April 15, 1985 and August 3, 1987 is not dischargeable.

The parties apparently concur that, as to some or all of the non-dischargeable taxes, more than ninety days had elapsed as of the date of the debtors' bankruptcy filing since the notice of tax deficiency was mailed to them by the IRS. Accordingly, as to those taxes, the debtors may not now seek a determination from the United States Tax Court. *See* 26 U.S.C. § 6213(a). While a partial payment may suffice with respect to the debtors' tax obligation under 26 U.S.C. § 6672, the debtors otherwise are now limited to paying in full the taxes assessed and seeking a refund in the appropriate United States District Court, 26 U.S.C. § 7422, or possibly in the United States Court of Federal Claims. *See Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (if taxpayer fails to timely file a Tax Court petition, 26 U.S.C. § 7421(a) enjoins taxpayer from impeding tax collection efforts; sole recourse is to pay tax in full and then contest the merits in a refund action); *Hillyer v. Commissioner Internal Revenue,* 817 F.Supp. 532 (M.D.Pa.1993) (same); *see generally Schiff v. United States,* 24 Cl.Ct. 249 (1991).[1]

---

1. There are also administrative proceedings which must be pursued before such a lawsuit may be filed. *E.g., Willingham v. United States,* 763 F.Supp. 275 (E.D.Tenn.1991). However, those administrative proceedings, as with the civ-il litigation, are limited to seeking a refund of taxes paid. *See Bajenski v. Chivatero,* 818 F.Supp. 1085 (N.D.Ohio 1993); *Magnone v. U.S.,* 733 F.Supp. 613 (S.D.N.Y.1989), *aff'd,* 902 F.2d

In their opposition to the defendant's abstention request, the debtors assert that they cannot afford to pay the disputed tax liability and then seek a refund. Therefore, the debtors maintain that this bankruptcy court should fix their non-dischargeable liability.

## II.

### A.

■ There is no dispute that I have the power on the request of a debtor (as well as a creditor) to determine the dischargeability of a particular claim. Fed.R.Bankr.P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt"); *accord, e.g., In re Deel,* 65 B.R. 230 (Bankr.W.D.Va.1986) (bankruptcy court could determine the dischargeability of a federal tax claim in a no-asset chapter 7 case at the request of the debtors). Here, however, the parties have agreed to all issues surrounding dischargeability and a consent order to that effect has been approved.

The debtors request that I go further and fix the amount of their tax obligation which will not be discharged. They argue that such a determination is imperative if they are to enjoy their "fresh start" after bankruptcy. In support, they refer to 11 U.S.C. § 505(a), which states in relevant part:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.[2]

The United States counters that because the text of section 505(a)(1) uses the word "may," the exercise of this statutory power is discretionary. In no-asset chapter 7 cases, since there will be no distribution to creditors, the defendant maintains that there is no valid purpose to adjudicating the debtors' tax liability in a bankruptcy court.

### B.

■ The language of section 505(a) makes clear that the bankruptcy court exercise of authority to fix a debtor's tax liability is discretionary. *Accord, e.g., In re Queen,* 148 B.R. 256, 259 (S.D.W.Va.1992), *aff'd without op.,* 16 F.3d 411 (4th Cir.1994); *In re Galvano,* 116 B.R. 367 (Bankr.E.D.N.Y.1990). The most frequent articulation of the general factors to be considered in the exercise of this discretion is as follows:

> In formulating a decision to exercise his discretion, the bankruptcy judge must examine the issue case by case. The analysis necessarily includes balancing the Bankruptcy Court's need to administer the bankruptcy case in an orderly and efficient manner, the complexity of the tax issues to be decided, the asset and liability structure of the debtor, the length of time required for trial and decision, judicial economy and efficiency, the burden on the Bankruptcy Court's docket, prejudice to the debtor and potential prejudice to the taxing authority responsible for collection from inconsistent assessments.

*In re Hunt,* 95 B.R. 442, 445 (Bankr. N.D.Tex.1989); *accord In re Galvano,* 116 B.R. at 372.

To some extent, the above framework for the exercise of discretion in applying section 505(a) looked to the congressional purposes behind this statutory enactment. Two purposes have been identified:

> Two policies underlie § 505's grant of federal authority to determine state tax matters. First, § 505 allows the prompt resolution of a debtor's tax liability, where that liability has not yet been determined prior

192 (2d Cir.), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

**2.** Section 505(a)(2) contains the following limitation:

> (2) The court may not so determine—
> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality

> was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title . . . .

There is no suggestion by the parties that the provisions of section 505(a)(2) are applicable to this proceeding.

to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition. *See City of New York v. Fashion Wear Realty Co. (In re Fashion Wear Realty Co.)*, 14 B.R. 287, 290 (D.C.N.Y.1981) (§ 2(a)(2A)). Secondly, § 505 protects "creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest." *City Vending of Muskogee v. Oklahoma Tax Com'n*, 898 F.2d 122, 124–25 (10th Cir.), *cert. denied*, 498 U.S. 823, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) (*quoting In re Northwest Beverage, Inc.*, 46 B.R. 631, 635 (Bankr. N.D.Ill.1985)); *accord, e.g., In re Hunt*, 95 B.R. at 444.

The majority approach is to conclude that neither of the above two purposes—prompt administration of the bankruptcy case and protection of creditor interests—would be served by a determination of a chapter 7 debtor's tax liability in no-asset chapter 7 cases. Therefore, many courts have held that abstention from fixing the amount of the tax claim is warranted. *Accord Emrich v. United States*, 1995 U.S.Dist. Lexis 1572, *2 (D.Nev.1995) (abstention affirmed, as "a determination of ... tax liability ... pursuant to 11 U.S.C. section 505 ... would serve no purpose in this no-asset Chapter 7 bankruptcy proceeding"); *In re Queen*, 148 B.R. at 259; *In re Thornton*, 1995 WL 442192, *6, 1995 Bankr. Lexis 897, *15–*16 (Bankr. M.D.Ga.1995) (no valid bankruptcy purpose would be served in adjudicating the non-dischargeable amount of a chapter 7 debtor's tax liability in a no-asset case); *In re Gosciniak*, 1994 WL 585928, *2–3, 1994 Bankr. Lexis 833, *6–*8 (Bankr.S.D.Ind.1994); *In re Smith*, 1993 WL 358459, 1993 Bankr. Lexis 1667 (Bankr.N.D.Ga.1993); *In re Ferguson*, 1993 WL 659172, 1993 Bankr. Lexis 2022 (Bankr.W.D.Va.1993); *In re Starnes*, 159 B.R. 748 (Bankr.W.D.N.C.1993); *In re Byerly*, 154 B.R. 718 (Bankr.S.D.Ind.1992); *In re Cain*, 142 B.R. 785 (Bankr.W.D.Tex.1992); *In re Millsaps*, 133 B.R. 547 (Bankr. M.D.Fla.), *recommendation approved*, 138 B.R. 87 (M.D.Fla.1991); *In re Kaufman*, 115 B.R. 378 (Bankr.S.D.Fla.1990); *In re Diez*, 45 B.R. 137 (Bankr.S.D.Fla.1984); *see also In re St. John's Nursing Home, Inc.*, 169 B.R. 795, 803–04 (D.Mass.1994) (abstention affirmed in chapter 11 case where the debtor's plan was already confirmed and only the debtor would benefit from a determination of the non-dischargeable tax claim).

However, this position is not unanimous. Other courts have concluded that the debtor's interest in a "fresh start" should cause a bankruptcy court to fix the amount of liability in no-asset chapter 7 cases, unless other factors—such as the complexity of the tax litigation—predominate. *Accord In re Wheeler*, 183 B.R. 265 (Bankr.W.D.Okla. 1995); *In re D'Alessio*, 181 B.R. 756 (Bankr. S.D.N.Y.1995); *In re Fyfe*, 186 B.R. 290 (Bankr.N.D.Ga.1995); *In re Anderson*, 171 B.R. 549 (Bankr.W.D.Va.1994); *see also In re Huddleston*, 1994 WL 764193, *6–7, 1994 Bankr. Lexis 1961, *18–*20 (Bankr.W.D.La. 1994) (abstention denied in a chapter 11 case postconfirmation).

In reaching their respective conclusions, a number of decisions rely upon the former Bankruptcy Act, 11 U.S.C. §§ 101, *et seq.* (repealed effective October 1, 1979) along with the legislative history surrounding the present Bankruptcy Code section 505. Given the evolution of bankruptcy court authority to adjudicate tax claims, these references are appropriate.

## C.

Questions surrounding the bankruptcy court's power to determine a debtor's tax liability first arose under the former Bankruptcy Act of 1898.

In 1966, in order to clarify the existing confusion relating to the general jurisdiction of the bankruptcy courts, Congress amended subdivision (a) of section 2 of the Bankruptcy Act (11 U.S.C. § 11), giving the courts of bankruptcy the jurisdiction to:

"(2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudi-

cated by a judicial or administrative tribunal of competent jurisdiction * * * "

*City of Amarillo v. Eakens,* 399 F.2d 541, 543 (5th Cir.1968), *cert. denied,* 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969); *accord Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d 921, 925 (3d Cir.1990). The reason for this statutory clarification of bankruptcy power to adjudicate tax disputes was also explained by the Fifth Circuit Court of Appeals:

> In actuality the effect of the amendment is to negate [prior] decisions and to confer jurisdiction upon the courts of bankruptcy to hear and determine questions as to amount or legality of tax claims where said claims have not progressed to an adjudication before an administrative, judicial or quasi-judicial body of competent jurisdiction. The amendment should be construed as a remedial effort, designed to alleviate an unfortunate situation in which many bankrupts and their creditors are placed. This situation is well-described in Collier on Bankruptcy:
>
> > "Debtors financially involved are not always vigilant in the exercise of their rights to challenge tax claims or secure abatements; their managements may be inept, incompetent, uninterested, or dishonest; indeed, they may be under pressure to accept over-assessments which may aid in maintaining a credit standing or commercial rating."
>
> The amendment, by authorizing redeterminations in those instances where the tax claim was never appealed, serves to protect creditors of the bankrupt from the bankrupt's lack of diligence or interest.

*City of Amarillo v. Eakens,* 399 F.2d at 543–44 (footnote omitted) (citing 6A *Collier on Bankruptcy* 183 (14th ed. 1965)); *accord In re Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir.1969).

Section 505 of the Code is the immediate successor to section 2a(2A) of the former Act. *Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d at 925; *accord, e.g.,* L. King, 3 *Collier on Bankruptcy,* ¶ 505.04 (15th ed. 1995). As noted in the legislative history surrounding the Code:

> Section 505. Determinations of tax liability: Authority of bankruptcy court to rule on merits of tax claims.—The House amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate. This authority applies, in general, whether or not the tax, penalty, fine, or addition to tax had been previously assessed or paid. However, the bankruptcy court will not have jurisdiction to rule on the merits of any tax claim which has been previously adjudicated, in a contested proceeding, before a court of competent jurisdiction.

124 Cong.Rec. H 11110 (Sept. 28, 1997, remarks of Rep. Edwards).

However, there was another statutory provision in the former Act which, in conjunction with section 2a(2A), is material to this dispute. In 1970, section 17 of the Act, former 11 U.S.C. § 35, was amended with the addition of section 17c. Of particular relevance to this proceeding is former section 17c(3) which read:

> After hearing upon notice, the court shall determine the dischargeability of any debt for which application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable *and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof.*

(emphasis added). Accordingly, based upon this language, bankruptcy courts under the former Act were directed to enter monetary judgments upon a determination that a claim, or a portion thereof, was non-dischargeable. *See, e.g., Matter of Hickman,* 410 F.Supp. 528, 533 (W.D.Mo.1976).

The effect of this amendment to section 17, coupled with section 2a(2A), upon tax litigation in bankruptcy courts was soon discussed after 1970. *See In re Durensky,* 377 F.Supp. 798 (N.D.Tex.1974), *appeal dismissed,* 519 F.2d 1024 (5th Cir.1975). In general, these two statutory provisions were interpreted as expressions of congressional intent for bank-

ruptcy courts to fix non-dischargeable tax liabilities.

> The provisions of Section 17c of the Bankruptcy Act enacted in 1970 provide a specific situation in which the power conferred on the court by Section 2a(2A) may be exercised; therefore, Section 17c should be viewed as supplemental to and in pari materia with Section 2a(2A). When read together, these two sections enable a bankruptcy court: (a) to determine the liability of the bankrupt for any tax—subject to the stated limits of Section 2a(2A); (b) to determine amount of the debt, if one exists; (c) to determine whether or not the debt is dischargeable; and (d) if the debt is not dischargeable, to render a judgment thereon.

*Eberly v. United States Internal Revenue Service,* 406 F.Supp. 1361, 1363 (M.D.Fla. 1976).

As in this proceeding, under the former Bankruptcy Act the IRS vigorously contested the debtor's use of bankruptcy courts as a forum for determining tax liabilities, as opposed to determining the dischargeability of the tax claim. Nonetheless, most courts construed sections 2a(2A) and 17c(3) as authorizing such bankruptcy litigation:

> The provisions of Section 17c(3) make it apparent that the power conferred on the bankruptcy court by Section 17c was not limited to adjudications with respect to dischargeable debts or to those as to which there exists a genuine issue as to their dischargeable nature. Thus the complaint was not subject to dismissal simply because it did not allege facts showing a basis upon which to construct a genuine contention that the debt was dischargeable.

*Eberly v. United States Internal Revenue Service,* 406 F.Supp. at 1363–64.

Therefore, under sections 2a(2A) and 17c(3) of the former Bankruptcy Act, bankruptcy courts were clearly empowered, in conjunction with dischargeability litigation, to determine the amount of prepetition tax liability which was non-dischargeable, so long as the tax had not been paid and so long as liability had not been contested prepetition. *See Gwilliam v. United States,* 519 F.2d 407 (9th Cir.1975); *In re Murphy,* 355 F.Supp. 1235 (N.D.Ala.1973). It also appears that this power was exercised even in no-asset chapter 7 cases:

> The Government also points to the huge increase in Bankruptcy petitions. Since the IRS does not ordinarily participate in the "no asset" cases, it is argued that a holding here that will force the Government to become involved in these case will waste time and effort. However, the Government admits that no precise figures have been developed to show how many cases would be affected by such a change. A case such as this, where the letter of the law appears clear, should not be decided upon a speculative policy argument.

*Matter of Epstein,* 416 F.Supp. 947, 951 n. 3 (E.D.N.Y.1976).

### III.

Obviously, those courts which hold that chapter 7 debtors in no-asset cases have the statutory right to fix the amount of non-dischargeable tax obligations in bankruptcy courts have concluded that the debtor's right to do so was made part of the Bankruptcy Code. However, that conclusion is overbroad.

Section 17c contained two grants of authority. First, a bankruptcy court was empowered to determine the dischargeability of a claim. Second, a bankruptcy court was authorized to fix the amount of the claim which was held non-dischargeable.

The first grant of authority, while not specifically articulated, was considered by Congress to be part of the broad jurisdictional grant found now in 28 U.S.C. § 1334:

> The provision in Bankruptcy Act § 17c, granting the bankruptcy courts jurisdiction to determine dischargeability is deleted as unnecessary, in view of the comprehensive grant of jurisdiction prescribed in proposed 28 U.S.C. § 1471(b), which is adequate to cover the full jurisdiction that the bankruptcy courts have today over dischargeability and related issues under Bankruptcy Act § 17c.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977) U.S.Code Cong. & AdminNews

5787; *accord* L. King, 3 *Collier on Bankruptcy*, ¶ 523.05 at 523–19 (15th ed. 1995). Thus, the United States does not contest my jurisdiction in this proceeding to determine whether aspects of its tax claim are dischargeable.

The second aspect of judicial power found in section 17c(3)—to fix the amount of nondischargeable debts, which is the issue posed by the abstention request—clearly was not made an express part of the present Code.

When the United States Bankruptcy Commission issued its report, which later became the basis of the current bankruptcy law, it suggested retention of section 17c(3) with a modification. Specifically, the Commission's proposed section 4–506(d) stated:

If the court determines a debt to be nondischargeable in a proceeding commenced under this section, it shall determine any remaining issues concerning liability on the debt, unless, for cause shown and in the interests of justice, the court suspends or declines the exercise of its jurisdiction.

*Report of the Commission on the Bankruptcy Laws of the United States*, H.R.Doc. No. 93–137, 93d Cong. 1st Sess., Pt. II at 137 (1973). Thus, the Commission suggested that there may be appropriate circumstances when, "in the interests of justice," a bankruptcy court should decline to exercise jurisdiction to determine the amount of a nondischargeable claim. *Id.*, Pt. I at 178.

This Commission-proposed statutory provision was never adopted by Congress. Present section 523 contains no language comparable to former section 17c(3). Whether this deletion removes from bankruptcy courts the power, in general, to fix a debtor's liability for a non-dischargeable debt has been raised by a bankruptcy commentator:

It should be noted that the conclusion that a debtor may petition the Bankruptcy Court to determine his personal liability for nondischargeable taxes contained in the Statements of Legislative Leaders is not without doubt. No express authority to this effect exists in the Code, and a long history of litigation, in which the Internal Revenue Service contested the jurisdiction of the Bankruptcy Court to do so, resulted in the addition of § 17(c) of the Bankrupt-

cy Act in 1970. Nevertheless, Congress continues to assume this jurisdiction exists.

Norton, 6 *Norton Bankruptcy Law and Practice 2d*, § 131:7, at 131–11 n. 42 (1994).

This reference to a congressional assumption of continuing authority by "Legislative Leaders" probably stems from the following congressional statement which preceded the passage of the current statute:

The rules are more complex where the debtor is an individual under chapter 7, 11, or 13. An individual debtor or the tax authority can, as under section 17c of the present Bankruptcy Act, file a request that the bankruptcy court determine the debtor's personal liability for the balance of any nondischargeable tax not satisfied from assets of the estate. The House amendment intends to retain these procedures and also adds a rule staying commencement or continuation of any proceeding in the Tax Court after the bankruptcy petition is filed, unless and until that stay is lifted by the bankruptcy judge under section 362(a)(8).

\*    \*    \*    \*    \*    \*

If a tax authority decides not to file a claim for taxes which would typically occur where there are few, if any, assets in the estate, normally the tax authority would also not request the bankruptcy court to rule on the debtor's personal liability for a nondischargeable tax. Under the House amendment, the tax authority would then have to follow normal procedures in order to collect a nondischargeable tax. For example, in the case of nondischargeable Federal income taxes, the Internal Revenue Service would be required to issue a deficiency notice to an individual debtor, and the debtor could then file a petition in the Tax Court—or a refund suit in a district court—as the forum in which to litigate his personal liability for a nondischargeable tax.

Under the House amendment, as under present law, an individual debtor can also file a complaint to determine dischargeability. Consequently, where the tax authority does not file a claim or a request that the bankruptcy court determine discharge-

ability of a specific tax liability, the debtor could file such a request on his own behalf, so that the bankruptcy court would then determine both the validity of the claim against assets in the estate and also the personal liability of the debtor for any nondischargeable tax.

124 Cong.Rec. H 11110 (Sept. 28, 1978, remarks of Rep. Edwards); S 17427 (Oct. 6, 1978, identical remarks of Sen. DeConcini).[3]

While this statement supports the debtors' notion that the power of the bankruptcy court to fix non-dischargeable tax liabilities was made a part of the Code, the examples found in the lengthy legislative statement do not address the present circumstances: a no-asset chapter 7 case where the debtors can no longer seek review in the United State Tax Court. Furthermore, the legislative statement notes that the bankruptcy court will have, under the Code, the discretion to determine whether or not to resolve the tax claim issue:

> In essence, under the House amendment, the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes.

*Id.*, at H 11111; S 17428.

In essence, the IRS contends here that the United States District Court is the appropriate forum for any tax liability determination, while the debtors maintain that this bankruptcy court is the proper forum.

### IV.

### A.

Based upon the evolution of section 505, its legislative history, and the absence of any provision comparable to former section 17c(3), a bankruptcy court has the power to fix a debtor's non-dischargeable tax liabil-

ties, but need not always do so.[4] Those courts which hold, at bottom, that such power must be exercised to protect a debtor's "fresh start" benefit, *see, e.g., In re Anderson*, 171 B.R. at 553–54, overlook that the mandatory language of section 17c(3) was never included in the present Code.

■ Furthermore, they overlook two more general bankruptcy principles. First, while claims resolution is listed as a core matter under 28 U.S.C. § 157(b)(2), it has been noted that a bankruptcy court may exercise its discretion not to resolve claims objections in appropriate circumstances. *E.g., In re Mark Jay Kaufman, P.A.*, 78 B.R. 309, 311 (Bankr. N.D.Fla.1987). Specifically, that discretion has been exercised when the estate will provide no distribution to the creditor whose claim has been challenged. *E.g., In re Radco Merchandising Services, Inc.*, 111 B.R. 684, 687 (N.D.Ill.1990); *In re Malone*, 74 B.R. 315, 320–21 (Bankr.E.D.Pa.1987).

Second, a bankruptcy court will normally not involve itself in fixing the amounts of claims in no-asset cases. Bankruptcy procedure is structured so that there will not be a claims resolution process in a no-asset chapter 7 case. By virtue of Fed.R.Bankr.P. 2002(e), creditors in such cases are informed that it is unnecessary to file claims since there will be no distribution to creditors.

■ In many respects, the issues raised in this proceeding are analogous to the usual practice of dismissing a pending adversary proceeding which does not involve bankruptcy law issues, upon dismissal of the bankruptcy case itself. *See, e.g., Chapman v. Currie Motors, Inc.*, 65 F.3d 78 (7th Cir. 1995). When the proceeding involves non-bankruptcy law issues it is generally an appropriate exercise of discretion to relinquish jurisdiction over this litigation unless factors such as judicial economy, fairness and convenience to the litigants, and the simplicity of the issues involved counsel otherwise. *E.g.,*

---

3. The remarks of Representative Edwards and Senator DeConcini, just prior to the enactment of the Code, have been viewed as "persuasive evidence" of congressional intent, due to their status as floor managers of the bankruptcy legislation. *Begier v. IRS*, 496 .U.S. 53, 64 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

4. Similarly, in non-tax dischargeability disputes, a bankruptcy court has the authority to determine the amount of a debtor's non-dischargeable liability. *See, e.g., In re McLaren*, 3 F.3d 958, 965–66 (6th Cir.1993); *Matter of Hallahan*, 936 F.2d 1496, 1507–08 (7th Cir.1991).

*In re Smith*, 866 F.2d 576, 580 (3d Cir.1989). Absent these considerations, and absent any bankruptcy issues or administrative concerns,

> [t]he bankruptcy proceeding having ended, the adversary proceeding became a dispute of no interest to anyone except the two adversaries. . . .

*Chapman v. Currie Motors, Inc.*, 65 F.3d at 82.

In dischargeability litigation, the bankruptcy court is an appropriate forum to determine the bankruptcy issue of dischargeability. But once that issue is resolved, the question becomes whether it is appropriate for a bankruptcy court to retain jurisdiction and adjudicate the amount of the debtor's non-dischargeable liability. In a no-asset chapter 7 case such as this, which has been fully administered and is ready to be closed upon the conclusion of this litigation, and with the issues surrounding liability all based upon non-bankruptcy law, application of the traditional factors will generally yield the conclusion that retention of jurisdiction over the balance of the dispute is inappropriate.[5] Given the recognized purposes behind the enactment of section 505(a), as well as its discretionary language, this conclusion is no less warranted in tax disputes.

### B.

The debtors here argue, and some courts have concluded, that a debtor's prebankruptcy failure to challenge a federal tax deficiency in Tax Court justifies the exercise of power under section 505(a) in chapter 7 no-asset cases for reasons of fairness to the debtor. *E.g., In re Fyfe*, 186 B.R. at 292:

> So long as the Debtor can [challenge the tax assessment] without having to pay the tax claim in advance, the Debtor should exhaust all other administrative and legal remedies, because those procedures were designed to deal with the specific issues the Debtor raises. . . .

> If the Debtor cannot get relief elsewhere without paying the claim, this court will hear the case. Otherwise, the claim would go unchallenged because the Debtor is bankrupt.

However, I find this conclusion unpersuasive, for it implicitly suggests that Congress intended to create another judicial forum in which taxpayers may litigate tax issues when the only interested parties to this dispute are the debtor/taxpayer and the IRS.

Under current tax law, a taxpayer generally has a choice between litigating in the Tax Court prior to payment of a tax deficiency asserted by the IRS, or paying the contested tax and then seeking a refund in federal district court or in the United States Court of Claims. *See* Norton, 6 *Norton Bankruptcy Law and Practice 2d*, § 131:2 (1994). However, a taxpayer must seek court review with the Tax Court within 90 days of the notice of deficiency. 26 U.S.C. § 6213(a).

As noted in *In re Millsaps*, 133 B.R. at 547:

> Were this court to respond to the Millsaps' tardy call by exercising its jurisdiction, no bankruptcy interest would be furthered. As the court has already pointed out, the estate and creditors are not affected by this matter. Although it is true that an exercise of this jurisdiction would benefit the debtors and further the "fresh start" policy of the Bankruptcy Code, that interest would only be served at the expense of the orderly enforcement of the internal revenue laws. Unless this court abstains in these unusual circumstances, every taxpayer would know that he or she could ignore all of the tax protest and determination procedures and opportunities provided by the Internal Revenue Code and regula-

---

5. Indeed, the factors of judicial economy, fairness and convenience and simplicity of issues—utilized in retention of jurisdiction considerations—are but more general expressions of the six factors articulated as appropriate in section 505(a) abstention determinations:

> balancing the Bankruptcy Court's need to administer the bankruptcy case in an orderly and efficient manner, the complexity of the tax

issues to be decided, the asset and liability structure of the debtor, the length of time required for trial and decision, judicial economy and efficiency, the burden on the Bankruptcy Court's docket, prejudice to the debtor and potential prejudice to the taxing authority responsible for collection from inconsistent assessments.

*In re Hunt*, 95 B.R. at 442.

**150**

tions, allow all time periods they provide to expire, watch the Service finally determine a tax, and then years later come into this court and obtain the judicial determination the taxpayer chose not to seek before. The interest of justice cannot be furthered by that result.

*Accord In re Starnes,* 159 B.R. at 751; *In re Cain,* 142 B.R. at 789.

Had Congress retained former section 17c(3) as part of the Bankruptcy Code, I would agree with the debtors' contention here. Instead, the decision to retain the bankruptcy court as a forum for determination of tax liabilities involves more general considerations of the interest of justice. The application of that more general standard persuades me that the *Millsaps* court has fairly articulated congressional intent.

■■■ Where a determination of non-dischargeable tax liability could affect the rights of creditors or advance the administration of the bankruptcy case, which are the two clear purposes embedded in section 505, justification will normally exist for the exercise of bankruptcy court power, unless factors such as judicial economy, fairness and convenience to the litigants, and the complexity of the tax issues involved suggest otherwise. *See In re Hunt.*[6] Conversely, in no-asset chapter 7 cases, when the rights of creditors and the administration of the case would not be affected, there normally will be little justification to exercise power under section 505 unless the interests of justice require.[7] And, unless the rights of creditors are involved, the interests of justice do not warrant allowing a chapter 7 debtor to ignore his or her ability to timely petition for Tax Court review in favor of bankruptcy court review.

Accordingly, for these reasons, the defendant's request to abstain shall be granted. An appropriate order will be entered.

6. In the legislative history, it was suggested that a bankruptcy court may abstain in favor of Tax Court when litigation had been pending prepetition in that latter forum for a period of time. 124 Cong.Rec. H 11111 (Sept. 28, 1978).

ORDER

AND NOW, this 24th day of October, 1995, for the reasons stated in the accompanying memorandum opinion, it is hereby ordered that this court shall abstain from determining the amount of the debtors' non-dischargeable tax liabilities to the United States.

As an order has been entered on October 23, 1995, determining the dischargeability of the defendant's claim, the clerk of court is directed to mark this proceeding closed.

7. For example, if a factual dispute exists regarding dischargeability which will involve the presentation of much or all of the evidence concerning liability, it would seem appropriate to determine both issues.